[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

**FILED**

FEB 27 2023 KRR

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Stephen Durr,

_____

Plaintiff(s),

v. United States Postal
Service, et al,

Defendant(s).

Case Number: _____

**1:23-cv-01212**
**Judge Steven C. Seeger**
**Magistrate Judge Jeffrey T. Gilbert**
**RANDOM**

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is __A Citizen_____ of the county of ___Cook_____ in the state of ___Illinois___.

3. The defendant is __United States Postal Service___, whose street address is __1500 W. Roosevelt Road_____.
(city) _Forest Pk_ (county) _Cook_ (state) _Illinois_ (ZIP) _60130_

(Defendant's telephone number)     (___) – _____

4. The plaintiff sought employment or was employed by the defendant at (street address)
__USPS–Bulk Mail Center__
__1500 W. Roosevelt Road__ (city) _Forest Park_
(county) _Cook_ (state) _IL_ (ZIP code) _60130_

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 06/27/2016

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5.   The plaintiff [*check one box*]

   (a)   ☐   was denied employment by the defendant.

   (b)   ☐   was hired and is still employed by the defendant.

   (c)   ☒   was employed but is no longer employed by the defendant.

6.   The defendant discriminated against the plaintiff on or about, or beginning on or about.
   (month)  June  , (day)  1st  , (year)  1996 .

7.1  *(Choose paragraph 7.1 or 7.2, do not complete both.)*

   (a)   The defendant is not a federal governmental agency, and the plaintiff
      [*check one box*] ☐*has* ☐*has not* filed a charge or charges against the defendant

      asserting the acts of discrimination indicated in this complaint with any of the

      following government agencies:

       (i)   ☐ the United States Equal Employment Opportunity Commission, on or about

          (month)_____(day)_____(year)_____.

       (ii)   ☐ the Illinois Department of Human Rights, on or about

          (month)_____(day)_____(year)_____.

   (b)   If charges *were* filed with an agency indicated above, a copy of the charge is

      attached. ☐ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

   It is the policy of both the Equal Employment Opportunity Commission and the Illinois

   Department of Human Rights to cross-file with the other agency all charges received. The

   plaintiff has no reason to believe that this policy was not followed in this case.

7.2  The defendant is a federal governmental agency, and

   (a)   the plaintiff previously filed a Complaint of Employment Discrimination with the

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 04/05/2018

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

    ☐  Yes (month)_____(day)_____ (year) _____

    ☒  No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_May_____

    (day)_24th_(year)_1996_.

(c)    Attached is a copy of the

    (i)  Complaint of Employment Discrimination,

        ☐ Yes    ☐ No, but a copy will be filed within 14 days.

    (ii) Final Agency Decision

        ☒ Yes    ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

    *(a)* ☐    the United States Equal Employment Opportunity Commission has not

        issued a *Notice of Right to Sue.*

    (b) ☐ the United States Equal Employment Opportunity Commission has issued

        a *Notice of Right to Sue,* which was received by the plaintiff on

        (month)_____(day)_____(year)_____a copy of which

        *Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

    (a)  ☐ Age (Age Discrimination Employment Act).

    (b)  ☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 04/05/2018

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c)  ☐  Disability (Americans with Disabilities Act or Rehabilitation Act)

(d)  ☐  National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e)  ☐  Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f)  ☐  Religion (Title VII of the Civil Rights Act of 1964)

(g)  ☐  Sex (Title VII of the Civil Rights Act of 1964)

(h.) ☒ Veteran Status, Under USERRA OF 38 USCA 4311(a), (c)

10.  If the defendant is a state, county, municipal (city, town or village) or other local

governmental agency, plaintiff further alleges discrimination on the basis of race, color, or

national origin (42 U.S.C. § 1983).

11.  Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims

by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42

U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the

Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12.  The defendant [*check only those that apply*]
     (a)  ☐  failed to hire the plaintiff.

     (b)  ☒  terminated the plaintiff's employment.

     (c)  ☐  failed to promote the plaintiff.

     (d)  ☐  failed to reasonably accommodate the plaintiff's religion.

     (e)  ☐  failed to reasonably accommodate the plaintiff's disabilities.

     (f)  ☐  failed to stop harassment;

     (g)  ☐  retaliated against the plaintiff because the plaintiff did something to assert rights
              protected by the laws identified in paragraphs 9 and 10 above;

     (h)  ☐  other (specify): _____

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 04/05/2018

4

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

_____

13.  The facts supporting the plaintiff's claim of discrimination are as follows:

Defendant Failed To Comply With Involuntary
Separation Procedure(s) Governing (Veterans)
Preference-Eligible(s) - See Amended
Complaint

14.  [*AGE DISCRIMINATION ONLY*] Defendant knowingly, intentionally, and willfully
discriminated against the plaintiff.

15.  The plaintiff demands that the case be tried by a jury. ☐ Yes ☒ No

16.  THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff
[*check only those that apply*]

(a)  ☐ Direct the defendant to hire the plaintiff.

(b)  ☐ Direct the defendant to re-employ the plaintiff.

(c)  ☐ Direct the defendant to promote the plaintiff.

(d)  ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e)  ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f)  ☒ Direct the defendant to (specify): See The Plaintiff
Amended Complaint

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g) ▪ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ▪ Grant such other relief as the Court may find appropriate.


Stephen Durr
(Plaintiff's signature)

Stephen Durr
(Plaintiff's name)

435 W. Oakdale Ave.
(Plaintiff's street address)

(City) Chicago (State) IL (ZIP) 60657

(Plaintiff's telephone number) (773) – 923-6243

Date: February 27th 2023


[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Rev. 04/05/2018

6

1UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Stephen Durr,                  )

                               )

     Plaintiff,          )

                               )   Case No.:

        v              )

                               )

United States Postal Service, et al.   )

Office of the U.S. Attorney General,  )

                               )

     Defendants.      )

## PLAINTIFF AMENDED COPY OF APPEAL TO INVOLUNTARY TERMINATION FROM EMPLOYMENT BY DEFENDANTS

- THAT THE PLAINTIFF APPEAL ARE BROUGHT UNDER The Uniformed Services Employment And Reemployment Rights Act (USERRA) of 38 USCA 4311(a), (c) ALSO JURISDICTION OF THIS COURT, ARE UNDER 28 USCA 1331 THAT BY THE PLAINTIFF RECENT DISCOVERY (2021) OF DEFENDANTS Knowing, Deliberate, ALSO Intentional Violation To The Uniformed Services Employment And Reemployment Rights Act (USERRA)(In Defendants Nonadherence To Involuntary Separation Procedure(s) Governing Preference-Eligibles (In The Termination Of The Plaintiff From Employment)), THAT I, THE PLAINTIFF NOW MOVES THIS COURT FOR REVIEW OF The Plaintiff (Involuntary) Termination From Employment, THE PLAINTIFF Asserting Facts Also Information, And Presents Evidence Demonstrating Defendants Violation To USERRA, STATED IN THE FOREGOING:

1.    June 1994 - The Plaintiff Began To Work For The United States Postal Services ((USPS), Defendants) In The Status As Being A 10 Point, Military (Service-Connected) Disabled Veteran, In The Position Of Mailhandler

- Attachment #1, Defendants Personnel Action Sheet

2.    December 14th, 1995 - That While At The Department Of Veterans Affairs (Westside) Medical Center (Now Jessie Brown VAMC), The Psychologist (Of The Plaintiff) Conducted An Evaluation Of His Health Condition (Of Service-Connected Disability); That Upon Conclusion Of Evaluation, The Psychologist Made Contact With The Supervisor (Of The Plaintiff) With Regard For Placement Of The Plaintiff On Leave For Medical Reason(s), Under ELM 12.1, Chapter 5, Section 514-22a

- Attachment #2, Plaintiff Psychologist Recommendation For Placement Of The Plaintiff To Leave For Medical Reasons
- Attachment #3, Employee And Labor Relations Manual (ELM) 12.1, Chapter 5, Section 514.22a

3.    TAKE NOTICE THAT On The Psychologist Recommendation, Bears A Date Of Receipt Stamp (Of December 15th, 1995) From Defendants Health Services Offices

2

(Indicating Receipt Of Correspondence From The Psychologist Of The Plaintiff (Attachment #3))

4.    THAT ON April 24th, 1996, Defendants Issued A Notice Of Proposed Removal (Of The Plaintiff) From Employment

- Attachment #4, Defendants Notice Of Proposed Of Removal, Dated April 24th, 1996

5.    ALSO, On The Notice Defendants (Having Acknowledged The Plaintiff Military (Veteran) Status And Having Been A Long-Time Employer Of Veterans And Are Readily Familiar With Federal Law(s) Governing The Benefits, ALSO THE Rights Of Veterans), Had Knowingly, As Purposely, Stated The Incorrect Separation Procedure Governing Preference-Eligible(s), AND

6.    THUS REFUSED TO ADHERE To The Involuntary Separation Procedure(s) For Preference-Eligible(s), As Required, Under ELM 12.1, Chapter 3, Section 365.14 (Attachment #5), That References 5 CFR 432.104, 105 (Attachment #6), THAT

7.    Defendants Followed The Separation Procedure(s) Governing Non-Preference Eligible(s), Under ELM 12.1, Chapter 6, Section 651.53 (Attachment #7), THAT

8.    CONSTITUTES AS A DENIAL OF The Plaintiff Benefit Of Employment;

9.    THAT NOTWITHSTANDING The Plaintiff Prima Facie Showing Of Defendants Denial Of The Plaintiff Right To The Aforementioned Involuntary Separation Procedure, That The Plaintiff Showing Of The Plaintiff Military (Veteran) Status Were A Substantial And/Or A Motivating Factor In The Denial Of The Benefit Of Employment Are Not Required Being That The Benefit Are Available Only For Preference-Eligible(s)

3

- Under Butterbaugh v. DOJ, 336 F 3rd 1332 (CAFC, 2003)

10.    AND MOREOVER, THAT IT IS A WELL-SETTLED AND ESTABLISHED PRINCIPLE THAT Federal Departments Must Abide By Their Own Regulations; AND

11.    THAT IF (In Particular) Defendants Termination Of The Plaintiff (From Employment) Were By Way Of Violation To Its Own Regulations, Renders The Notice Of Proposed Removal, As Well As The Subsequent Notice Of Termination (Attachment #8) NULL AND VOID, ALSO INVALID ON ITS FACE; IMPROPER

- Under Service v. Dulles, 354 U.S. 363 (1957); Voge v. United States, 844 F.2nd 776 (CAFC, 1988)

12.    THAT BASED FROM THE RECORD PRESENTED HEREIN (That Establishes A Violation To USERRA By Defendants, That No Other Information, Testimony, Nor Evidence Are Needed For This Court Finding Also Determination Of Defendants As Being With Violation To USERRA, ALSO THAT

13.    IF Such Information, Evidence, Or Testimony Were Available, That It Would Not Defeat The Plaintiff Demonstrations Of USERRA Violations, By Defendants, And Are Thus Futile To This Appeal

14.    THAT DEFENDANTS HAD FAILED TO Implement And Enforce Federal, Also Defendants Own Regulatory Procedure Governing The Separation, Involuntary, Of The Plaintiff (From Employment) With Violation To 38 USCA 4311(c)(1), And Are Thus With Violation Also To The Privileges And Immunities Clause of 14 USCA

4

15.     AND FURTHERMORE, That Defendants (USPS) Termination Of The Plaintiff (From Employment) Were Obtained Without Adherence To Procedure(s) Required By Law, Rule, Or Regulation

- With Violation To 5 USCA 7703 (c)(2)

16.     THAT BEING The Plaintiff Have Not Raised The Present Violation (To USERRA) In Any Venue(s), NOR Having Been Adjudicated On Its Merit(s) That The Plaintiff Appeal Are Not Barred Under The Doctrine Of Res Adjudicata

- See Lucky Brand Dungarees, Inc. v. Marcel Fashion Group Inc., 590 US- (2020); 140 S.Ct. 1589 (2020)

17.     That USERRA Imposes No Time Limit(s) For The Filing Of The Plaintiff Appeal (Before The MSPB)

- Under 38 USCA 4327(b)
- See Erickson v. United States Postal Service, 636 F.3rd 1343 (CAFC, 2011)

17a.    The Plaintiff Have Elected Not To Apply To The Secretary Of Labor For Investigation Of USERRA Violation

- Under 38 USCA 4324(b)(1)

**ENTITLED RELIEF REQUESTED BY THE PLAINTIFF**:

18.     AND WHEREFORE, THE PLAINTIFF SEEKS The Following Reinstatement, Retroactive, To Employment Relief From Defendants (USPS), Stated As Follows (Under ELM 12.1, Chapters 4 & 5):

5

a) That The Plaintiff Requests A Formal Letter Of Apology (LOA) From Defendants (USPS), For This Occurrence

b) That The Plaintiff Be Reinstated To Position Of Mailhandler From Date Of Wrongful Separation, To February 2001, With Backpay, Cost-Of-Living Adjustments (COLA), Also Periodic Grade & Step Increases

c) From The Period March 2001 To February 2014, That The Plaintiff Be Appointed To Supervisor, With All Benefits And Entitlements Of Position

- Under 38 USCA 4314, 4313 (a) (1) (a)

d) From The Period March 2014 To The Present, That The Plaintiff Be Appointed To Shift Manager (MDO), With All Benefits And Entitlements Of Position

e) Under 38 USCA 4314, 4313 (a) (1) (a)

f) That All Time Lost From Wrongful Separation, Be Counted As Seniority Time Toward Retirement (From June 1st 1996, To Present)

g) That All Vacation, Also Sick Leave Days, Be Credited The Plaintiff (From June 1st 1996, To Present)

h) That The Plaintiff Elect To Reenter The Federal Employees' Retirement System - Thrift Savings Plan (FERS-TSP), And Would Like For One-Half (1/2) Of Base Pay (For Every Pay Period) To Be Deposited Into Plaintiff FERS-TSP Account, With Employer-Matching Contributions, Plus Quarterly/Semi-Annually Compounded Interest (From June 1st 1996, To Present)

- Under 38 USCA 4318

6

19.    THAT The Plaintiff Seeks The Following Damage(s) For This Occurrence, In The Form Of:

a) Consequential Damage(s) For Reason Of, As Consequence Of The Violations To The Veterans Preference Act, Also The Prohibited Personnel Practices Statute By Defendants (USPS) Ultimately Resulting In The Wrongful Termination Of Employment Of The Plaintiff, That The Plaintiff Were Without Employment For A Significant Amount Of Years (Over 26); That The Plaintiff Thus Became Dependent To Monthly Social Security Payments, Being Economically Distraught; That Defendants (USPS) Should Had Known The Veterans Preference Rights Of The Plaintiff, For It Is Expressly Stated In Defendants Regulation, ELM 12.1, Section 365.14, In The Amount Of $37,250,000

- Consequential Damage(s) Awarded Under 5 CFR 1201.202(b) (3); Being That The Preference Eligible Are Not Required To File A Special Counsel Complaint, And May Appeal Directly To The MSPB, Under 5 USCA 1214(a) (3)

- Also 31 USCA 1304 (a)(1)-(3)(A)

b) Liquidated Damage(s), In An Amount Equal To The Backpay Award, For Defendants (USPS) Knowing And Willful Violation(s) To The Veterans Preference Right(s) Of The Plaintiff

- Under 5 CFR 1201.202(d)

- Also 31 USCA 1304 (a)(1)-(3)(A)

7

c) Compensatory Damage(s); For The Plaintiff Loss Of Over 26 Years Of Postal Service Career; For The Loss Of Over 26 Years Of Gainful, Secure Employment, And A Continuous Salary; Also For The Loss Of Over 26 Years Of Privilege(s) And Benefit(s) Of Employment, To Include: The Loss Of The Opportunities For Advancement(s), Also Promotion(s) To Higher Positions Of Employment (Potential, Also Future Earnings/Losses); For The Loss Of The Opportunities For The Furtherance Of Education (Programs(s)) Offered By Agency (USPS); For The Loss Of The Opportunities To Acquire Items Of Luxury, Such As Automobile(s), Housing, Accommodations; That The Plaintiff Could Not Do Thing(s) Previously Done, Such As Travel, Fine Dining, Also Outdoor Activities/Adventure(s); The Plaintiff Were Grossly Inconvenienced, And Also Had A Loss Of The Enjoyment Of Life, For Over 26 Years, In The Amount Of $93,885,000

- Under 5 CFR 1201.202(c)

- Also 31 USCA 1304 (a)(1)-(3)(A)

d) Punitive Damage (In Ratio To Compensatory Damage Award) For Agency (USPS) Blatant, Deliberate, Intentional, Willful Also Wanton Violations To The Veterans Preference Act, Also The Prohibited Personnel Practices Act Statute (Constituting A Discriminatory Act(s)), And Being With Direct Violation To The Uniformed Services Employment And Reemployment Rights Act (USERRA), The Due Process Clause Of 5 USCA, The Privileges And Immunities Clause of 14 USCA; Also Defendants Own Regulatory Procedure(s) (Contained In ELM 12.1, Section 365.14) AND THAT THIS OCCURRENCE, Have Spanned For A Period Of Over 26 Years Without The Acknowledgement, NOR The Admittance From Agency (USPS) That The Plaintiff

8

Veterans Preference Also Other Rights Were Violated With Regard For The Termination Of The Plaintiff (From Employment); AND THAT IF The Plaintiff Had Not Made The Discovery Of Such Knowing And Purposeful Violations (To The Act) By Defendants, That Defendants (USPS) Would Not Had Made Notification To The Plaintiff Of Violation(s) To Law(s); AND TO THIS DATE, Defendant Have Not Made Any Such Notification To The Plaintiff Of Defendant Wrongful Separation Of The Plaintiff From Employment AND THAT THIS OCCURRENCE, ARE UNBECOMING, ALSO UNACCEPTABLE, From Defendant; THAT ENOUGH, IS ENOUGH, FROM DEFENDANT, In The Amount Of $837,645,000

- Under 31 USCA 1304(a)(1)-(3)(A)
- State Farm v. Campbell, 538 US 408 (2003) Citing BMW v. Gore, 517 US 559 (1995)

e) THAT THE Plaintiff Appeal To Involuntary Termination From Employment Are Made Pursuant To:

- The Uniformed Services Employment And Reemployment Rights Act (USERRA), Of 38 USCA 4311(a), (c)
- The Federal Due Process Clause, Of 5 USCA
- The Veterans Preference Act, Of 5 CFR 432.104, 105
- The Prohibited Personnel Practices Act, Of 5 USCA 2302(b)(11)(A), (B)
- The Privileges And Immunities Clause Of 14 USCA

- ATCH 1

1. Appendix of Attachments Cited Are Contained In A Separate Packet

9

**Dated: February 27, 2023**                    Respectfully Submitted,

/s/ *Stephen Durr*
STEPHEN DURR
Plaintiff, Pro sé #99500
435 W. Oakdale Ave
Unit 2e
Chicago, IL 60657
773-923-6243

## CERTIFICATION

THAT I, The Plaintiff, Affirm That The Statements Contained Herein In The

Plaintiff Appeal To Involuntary Termination From Employment By Defendants Are True

And Correct, To The Best Of The Plaintiff Knowledge, Understanding, Also Belief

/s/ *Stephen Durr*
STEPHEN DURR
Plaintiff, Pro sé

February 27, 2023

10

## **PROOF OF SERVICE**

THAT I, The Plaintiff, Certify That (1) Copy Of The Plaintiff Appeal To Involuntary Termination From Employment By Defendants Have Been Mailed To Defendant-Defendants Via Hand Delivery, To The Following Address:

1.  Office of the U.S. Attorney General
    219 S. Dearborn St.
    24th Floor
    Chicago, Illinois 60604

/s/ ***Stephen Durr***
STEPHEN DURR
Plaintiff, Pró se
435 W. Oakdale Ave
Unit 2e
Chicago, IL 60657
773-923-6243

February 27, 2023

## APPENDIX TO ATTACHMENTS CITED IN APPEAL

**TAB**

ATTACHMENT #1 -    Respondents (USPS) Personnel Action
Sheet...............................................................................A

ATTACHMENT #2 -    The Petitioner Psychologist
Recommendation For The Placement Of
The Petitioner To Leave For Medical
Reason(s) ........................................................................B

ATTACHMENT #3 -    Employee And Labor Relations Manual
(ELM) 12.1, Chapter 5, Section 514.22a .........................C

ATTACHMENT #4 -    Respondents (USPS) Notice Of Proposed
Removal, Dated April 24th, 1996 .....................................D

ATTACHMENT #5 -    Employee And Labor Relations Manual
(ELM) 12.1, Chapter 5, Section 365.14 ........................... E

ATTACHMENT #6 -    Title 5 Of The Code Of Federal
Regulations, Sections 432.104, 105 ................................. F

ATTACHMENT #7 -    Employee And Labor Relations Manual
(ELM) 12.1, Chapter 6, Section 651.63 ...........................G

ATTACHMENT #8 -    Respondents (USPS) Notice Of
Termination (From Employment), Dated
May 16th, 1996 ...................................................................H

/s/ *Stephen Durr*
STEPHEN DURR
Plaintiff-Petitioner, Pró se
435 W. Oakdale Ave
Unit 2e
Chicago, IL 60657
773-923-6243
stephendurr1979@gmail.com

# APPENDIX TO ATTACHMENTS CITED IN APPEAL

**TAB**

ATTACHMENT #1 - Respondents (USPS) Personnel Action Sheet.................................................................................A

ATTACHMENT #2 - The Petitioner Psychologist Recommendation For The Placement Of The Petitioner To Leave For Medical Reason(s) ........................................................................B

ATTACHMENT #3 - Employee And Labor Relations Manual (ELM) 12.1, Chapter 5, Section 514.22a .........................C

ATTACHMENT #4 - Respondents (USPS) Notice Of Proposed Removal, Dated April 24th, 1996 .....................................D

ATTACHMENT #5 - Employee And Labor Relations Manual (ELM) 12.1, Chapter 5, Section 365.14 ...........................E

ATTACHMENT #6 - Title 5 Of The Code Of Federal Regulations, Sections 432.104, 105 .................................F

ATTACHMENT #7 - Employee And Labor Relations Manual (ELM) 12.1, Chapter 6, Section 651.63 ...........................G

ATTACHMENT #8 - Respondents (USPS) Notice Of Termination (From Employment), Dated May 16th, 1996 ..................................................................H

/s/ **Stephen Durr**
STEPHEN DURR
Plaintiff-Petitioner, Pró se
435 W. Oakdale Ave
Unit 2e
Chicago, IL 60657
773-923-6243
stephendurr1979@gmail.com

## PREVIOUS FILING(S) OF THE APPEAL PLAINTIFF

That In 2019, The Plaintiff Filed A Claim With The Court That Was Dismissed In January 2020 For Lack Of Subject Matter Jurisdiction; Also, A Prior Claim Was Filed In The Court Of Federal Claims (2018) That Was Dismissed In 2019 (For Timeliness Reasons, Under The Tucker Act.)

The Plaintiff States That In This Filing, Both Defect(s) Have Been Cured, Being That The Present Case Are Under The Armed Services Administrative Procedure Act (Of 10 USCA 1558 (f)(3)(A)), As Opposed To The Federal Administrative Procedure Act (Of 5 USCA 702, 706 - Basis For Dismissal In USDC-DC); The Plaintiff's 2019 Decision Renders The Appeal Timely Under 28 USCA 2501 (6-Year Statute Of Limitation), Which Cures Timeliness Defect. The Issues At Hand Have Never Been Adjudicated By Any Court On Its Merits, And Thus Are Not Barred Under The Doctrine Of Res Adjudicata

# APPENDIX TO ATTACHMENTS CITED IN APPEAL

**TAB**

ATTACHMENT #1 –   Respondents (USPS) Personnel Action
Sheet.................................................................................A

ATTACHMENT #2 –   The Petitioner Psychologist
Recommendation For The Placement Of
The Petitioner To Leave For Medical
Reason(s) ........................................................................B

ATTACHMENT #3 –   Employee And Labor Relations Manual
(ELM) 12.1, Chapter 5, Section 514.22a ........................C

ATTACHMENT #4 –   Respondents (USPS) Notice Of Proposed
Removal, Dated April 24th, 1996 ...................................D

ATTACHMENT #5 –   Employee And Labor Relations Manual
(ELM) 12.1, Chapter 5, Section 365.14 ..........................E

ATTACHMENT #6 –   Title 5 Of The Code Of Federal
Regulations, Sections 432.104, 105 ...............................F

ATTACHMENT #7 –   Employee And Labor Relations Manual
(ELM) 12.1, Chapter 6, Section 651.63 ..........................G

ATTACHMENT #8 –   Respondents (USPS) Notice Of
Termination (From Employment), Dated
May 16th, 1996 ...............................................................H

/s/ *Stephen Durr*
STEPHEN DURR
Plaintiff-Petitioner, Pró se
435 W. Oakdale Ave
Unit 2e
Chicago, IL  60657
773-923-6243
stephendurr1979@gmail.com

16

## RELIEF REQUESTED BY THE PLAINTIFF

1. That The Plaintiff Brings Appeal Under The Armed Services Administrative Procedure Act (10 USCA 1558(f)(1)-(3)(A)-(D)), And Seeks Entitled Relief Under 10 USCA 1558(c)(2)(A), (g)(2)(2), Also 10 USCA 1552(c)(1), (d), Stated As Follows:

a. That Defendants Retroactively Reinstate The Plaintiff To Military Service, Effective From The Date Of The Plaintiff's Wrongful Separation From Service (September 9, 1994) To The Present; That From The Date Of Wrongful Separation From Service To The Present, Be Considered As Time Constructively Served/Constructive Service Credit (CSC) Counted Toward Retirement

b. That Defendants Make The Proper Adjustment To The Plaintiff's Reenlistment/Reentry Code From A-RE4, To A RE1

2. That The Plaintiff Be Credited With The Good Conduct Medal (GCM) (For Every 3 Years Of Service), The Meritorious Services Medal (MSM), The Distinguished Service Medal (DSM), The National Defense Service Ribbon (NDSR) (1st Oak Leaf Cluster) For Military Service During Iraq; The Soldier's Medal (SM), The Armed Forces Service Medal (AFSM)

a. AND THAT If Wrongful Separation Had Not Occurred And The Plaintiff Had Been Reinstated To Military Service, That The Plaintiff Would Had Made Application For, And Thus Would Had Made Attendance To The Army Airborne Qualification Course With A High Probability That The Plaintiff Would Had Made Completion Of Course; But Nevertheless, During Time Of Wrongful Separation THAT

# ATTACHMENT #1

# Respondent (USPS) Notice Of Personnel Action

5. That The Plaintiff Have Lost A Significant, And Also A Substantial Amount Of Time In His Military Service Career, That Which Could Never Be Replaced, Nor Any Dollar Amount Could Ever Compensate For

6. The Plaintiff Requests A Formal Letter Of Apology (LOA) From Defendants, For This Unnecessary And Unacceptable Occurrence

7. That Defendant #2 (Department Of The Army) Are A Department Of Defendant #1 And Defendant #1 Possess Authoritative Jurisdiction Over Defendant #2 By Way Of Enactment (Prescription) Of Law(s) Governing The Operation Of Defendant #2

8. That The Law(s) Prescribed By Defendant #1 (In This Case, 10 USCA 1203(b)(3)) That Were Not Adhered To By Defendant #1 (In Defendant #1 Regulation, AR 635-40, Chap 7-11a (2)(b)) That The Plaintiff Were Separated Wrongfully Under, Reflects Defendant #1 Law(s) Governing, Also That Defendant #1 Are Indirectly Responsible For The Plaintiff's Unlawful Separation (for The Reason Of Defendant #1 Nonassurance (Failure) In Defendant #2 Compliance With Prescription Of Law(s) Enacted By Defendant #1), And That Defendant #1 Should Be Held Jointly, If Not Fully Responsible (Liable) For Any Claim(s) Arising From The Wrongful Separation From Service, Given The Relationship Between Defendants (Corporation And Subsidiary), Also Defendant #1 Duty Of Assurance To Defendant #2 Compliance With Laws

• Under 10 USCA 1558 (f)(1)-(3)(A)-(D). Also Section 1552 (a), (b), (c)(1), (d)

2

| | | |
|---|---|---|
| 01 Effective Date | 06-26-1996 | |

**NOTIFICATION OF PERSONNEL ACTION**
**U. S. Postal Service**

| 02 Social Security Number |
|---|
| ▓▓▓▓▓ |

**EMPLOYEE INFORMATION**

| No. | Field | Value | No. | Field | Value |
|---|---|---|---|---|---|
| 03 | Employee Name-Last | DURR | 39 | FLSA Status | N – NON-EXEMPT |
| 04 | Employee Name-First | STEPHEN | 40 | Pay Location | 234 |
| 05 | Employee Name-Middle | | 41 | Rural Carrier-Route | |
| 06 | Mailing Address Street/Box/Apts | 911 N HORAN AVE | 42 | Rural Carr-L-Rte ID | |
| 07 | Mailing Address-City | CHICAGO | 43 | Rural Carr-Pay Type | |
| 08 | Mailing Address-State | IL | 44 | Rural Carr-Tri-Weekly | |
| 09 | Mailing Address-Zip+4 | 60651-4157 | 45 | Rural Carr-FLSA | |
| 10 | Date of Birth | 07-14-1971 | 46 | Rural Carr-Commit | |
| 11 | Veterans Preference | 6 – 10 PT COMP OVER 30% | 47 | Rural Carr-EMA | |
| 12 | Sex | | 48 | Rural Carr-Hours | |
| 13 | Minority | | 49 | Rural Carr-Miles | |
| 14 | Disability | | 50 | Job Sequence | 1 |
| 15 | Leave Comp Date | 12-22-1990 | 51 | Occupation Code | 2315-01XX |
| 16 | Enter on Duty Date | 06-25-1994 | 52 | Position Title | MAIL HANDLER |
| 17 | Retirement- Comp Date | 06-25-1994 | 53 | Functional Oper Nbr | 1700 |
| 18 | Serv Anniversary PPYR | 06-1994 | 54 | Designation/Activity | 12/0 |
| 19 | TSP Eligibility | Y – ELIGIBLE WITH DEDUCT | 55 | Position Type | 1 – FULL TIME |
| 20 | TSP Service Comp Date | 03-05-1994 | 56 | Limit Hours | |
| 21 | Prior CSRS Service | N | 57 | Allowance Code | |
| 22 | Frozen Csrs Time | | 58 | Employment Type | |
| 23 | Leave Data-Category | 6 – HOURS/PP | | **SALARY INFORMATION** | |
| 24 | Leave Data-Chg PPYR | 01-2006 | 59 | Pay Rate Code | A – ANNUAL RATE |
| 25 | Leave Data-Type | 1 – ADVANCED AT BEGINNING | 60 | Rate Schedule Code | N – MAIL HANDLERS |
| 26 | Credit Military Serv | | 61 | Grade/Step | 04/ A |
| 27 | Retired Military | | 62 | Base Salary | 21,285 |
| 28 | Retirement Plan | 8 – FERS | 63 | Cola | 1,789 |
| 29 | Employee Status | | 64 | Cola Roll-In Ind | |
| 30 | Life Insurance | W – 5X BASIC PAY | 65 | Next Step PPYR | 16-1996 |
| 31 | Special Benefits | | 66 | Merit Anniv Date | |
| | **POSITION INFORMATION** | | 67 | Merit Lump Sum | |
| 32 | Employ Office-Fin No | 16-1541 | 68 | Special Salary Code | |
| 33 | Employ Office-Name | CHICAGO BULK MAIL CTR | 69 | Protected RSC | |
| | | | 70 | Protected Grade/Step | |
| 34 | Employ Office-Address | FOREST PARK IL 60130-9998 | 71 | Expiration PP/YR | |
| | | | 72 | Protected RC Hours | |
| 35 | Duty Station-Fin No | 16-1541 | 73 | Protected RC Miles | |
| 36 | Duty-Station-Name | CHICAGO BULK MAIL CTR | 74 | RC Guaranteed Salary | |
| 37 | Appt Expiration Date | | 75 | Annuity Amount | |
| 38 | Probation Expir Date | | 76 | Red Circle Code | 0 |
| | **NATURE OF PERSONNEL ACTION** | | | | |

| 77 Nature of Action Code | 346 | | | | |
|---|---|---|---|---|---|
| 79 Description | REMOVAL (FOR CONDITIONS ARIS | 78 Authority | 39-USC SECT. 1001 | | |
| 84 Remarks | | 80 Code 522 | 81 Code 521 | 82 Code 540 | 83 Code 676 |

LAST DAY IN PAY STATUS 19960626
SF-8 ISSUED 19960626
SF 8, 2810, 2819, AND 2821 HAVE BEEN GIVEN TO THE EMPLOYEE.
ABSENT WITHOUT OFFICIAL LEAVE (AWOL) – LETTER DATED 4/24/96
WB 6/26/96

| 85 Authorization | | 86 Processed Date | 06-27-1996 |
|---|---|---|---|
| JOHN T. WEEKER, VICE PRESIDENT AREA OPERATIONS-GREAT LAKES | | 87 Personnel Office ID | CP30 |
| PS Form 50, March 1990 (Exception to Standard Form 50) 000005 | OPF COPY | 88 OPF Location | CHICAGO BULK MAIL CTR |

3

B

# ATTACHMENT # 2

## Dr. Willer Psychologist Request For The Placement Of The Petitioner To Leave For Medical Reasons, Dated December 14th 1995

4



**DEPARTMENT OF VETERANS AFFAIRS**
West Side Medical Center
PO Box 8195
Chicago IL 60680

In Reply Refer To:

December 14, 1995

Mr Kuntu
Chicago Bulk Mail Center
7500 W. Roosevelt Rd
Forest Park IL 60130

Dear Mr Kuntu:

Stephen Durr ( ) has been under my care since July, 1993. He is currently having an exacerbation of symptoms. It is more serious than it initially appeared. I recommend that he be excused from work on leave for medical reasons until January 19. I will reevaulate him around that time.

I hope this information is helpful. Please let Mr Durr know if you need additional information, and I will be glad to provide it.

Sincerely,

Janet Willer, Ph.D.

# ATTACHMENT #3

Employee And Labor Relations Manual (ELM) 12.1, Chapter 5,
Section 514.22a

# 5 Employee Benefits

## 510 Leave

### 511 General

#### 511.1 Administration Policy

The U.S. Postal Service policy is to administer the leave program on an equitable basis for all employees, considering (a) the needs of the USPS and (b) the welfare of the individual employee.

#### 511.2 Responsibilities

##### 511.21 Postal Officials

Postal officials:

a. Administer the leave program.

b. Inform employees of their leave balance.

c. Approve or disapprove requests for leave.

d. Record leave in accordance with Handbook F-21, *Time and Attendance*, or Handbook F-22, *PSDS Time and Attendance*.

e. Control unscheduled absences (see 511.4).

##### 511.22 Postal Data Centers (PDCs)

Postal data centers (PDCs):

a. Maintain official leave records.

b. Provide leave data to installation when employees are being separated.

##### 511.23 Postal Employees

Postal employees:

a. Request leave by completing Form 3971, *Request for or Notification of Absence*.

b. Obtain approval of Form 3971 before taking leave — except in cases of emergencies.

c. Avoid unnecessary forfeiture of annual leave.

### 513.226 Leave Credit Adjustment

See 514.24.

## 513.3 Authorizing Sick Leave

### 513.31 Policy

#### 513.311 General

Sick leave cannot be granted until it is earned, except as provided in 513.5.

#### 513.312 Restriction

An employee who is in sick leave status may *not* engage in any gainful employment unless prior approval has been granted by appropriate authority. (See part 650, *Code of Ethics*.)

### 513.32 Conditions for Authorization

| Conditions | |
|---|---|
| a. Illness or injury. | If employees are incapacitated for the performance of official duties. |
| b. Pregnancy and confinement. (Sick leave, annual leave, or LWOP is granted as may be necessary.) | If absence is required for physical examinations or periods of incapacitation. |
| c. Medical, dental, or optical examination or treatment. | If absence is necessary during the employee's regular scheduled tour. |
| d. Contagious disease. A contagious disease is a disease ruled as requiring isolation, quarantine, or restriction of movement of the patient for a particular period by the health authorities having jurisdiction. | If employees (1) must care for family member afflicted with a contagious disease, (2) have been exposed to a contagious disease and would jeopardize the health of others, or (3) have evidence supplied by the local health authorities or certificate signed by a physician certifying the need for the period of isolation or restriction. |
| e. Medical treatment for disabled veterans. (Sick leave, annual leave, or LWOP is granted as may be necessary.) | If employees (1) present a statement from a duly authorized medical authority that treatment is required, and (2) when possible, give prior notice of the definite number of days and hours of absence. (Such information is needed for work scheduling purposes.) |

### 513.33 Application for Sick Leave

#### 513.331 General

Except for unexpected illness/injury situations, sick leave must be requested on Form 3971 and approved in advance by the appropriate supervisor.

### 513.332 Unexpected Illness/Injury

An exception to the advance approval requirement is made for unexpected illness/injuries; however, in these situations the employee must notify appropriate postal authorities as soon as possible as to their illness/injury and expected duration of absence. As soon as possible after return to duty, employees must submit a request for sick leave on Form 3971. Employees may be required to submit acceptable evidence of incapacity to work as outlined in the provisions of 513.36, *Documentation Requirements*. The supervisor approves or disapproves the leave request. When the request is disapproved, the absence may be recorded as annual leave, if appropriate, as LWOP or AWOL, at the discretion of the supervisor as outlined in 513.342.

### 513.34 Form 3971, Request for, or Notification of, Absence

#### 513.341 General

Application for sick leave is made in writing, in duplicate, on Form 3971, *Request for or Notification of Absence*.

#### 513.342 Approval/Disapproval

The supervisor is responsible for approving or disapproving applications for sick leave by signing Form 3971, a copy of which is given to the employee. If a supervisor does not approve an application for leave as submitted, the Disapproved block on the Form 3971 is checked and the reason(s) given, in writing, in the space provided. When a request is disapproved, the granting of any alternate type of leave, if any, must be noted along with the reason for the disapproval. AWOL determinations must be similarly noted.

### 513.35 Postmaster Absences

There are special requirements for postmaster absences:

a. *Leave Replacement.* A postmaster whose absence requires the hiring of a leave replacement must notify the appropriate official.

b. *Absence Over 3 Days.* A postmaster who is absent in excess of 3 days must submit Form 3971 within 2 days of returning to duty or, for an extended illness, at the end of each accounting period.

### 513.36 Documentation Requirements

#### 513.361 Three Days or Less

For periods of absence of 3 days or less, supervisors may accept the employees' statement explaining the absence. Medical documentation or other acceptable evidence of incapacity for work is required only when the employee is on restricted sick leave (see 513.37) or when the supervisor deems documentation desirable for the protection of the interests of the Postal Service.

#### 513.362 Over Three Days

For absences in excess of 3 days, employees are required to submit medical documentation or other acceptable evidence of incapacity for work.

Employee Benefits
Leave

ELM 12.1 Contents · Summary of Updates

513.363

### 513.363 Extended Periods

Employees who are on sick leave for extended periods are required to submit at appropriate intervals, *but not more frequently than once every 30 days*, satisfactory evidence of continued incapacity for work unless some responsible supervisor has knowledge of the employee's continuing incapacity for work.

### 513.364 Medical Documentation or Other Acceptable Evidence

When employees are required to submit medical documentation pursuant to these regulations, such documentation should be furnished by the employee's attending physician or other attending practitioner. The documentation should provide an explanation of the nature of the employee's illness or injury sufficient to indicate to management that the employee was (or will be) unable to perform his or her normal duties for the period of absence. Normally, medical statements such as "under my care" or "received treatment" are not acceptable evidence of incapacitation to perform duties. Supervisors may accept proof other than medical documentation if they believe it supports approval of the sick leave application.

### 513.365 Failure to Furnish Required Documentation

If acceptable proof of incapacitation is not furnished, the absence may be charged to annual leave, LWOP, or AWOL.

### 513.37 Restricted Sick Leave

### 513.371 Reasons for Restriction

Supervisors or installation heads who have evidence indicating that an employee is abusing sick leave privileges may place an employee on the restricted sick leave list. In addition, employees may be placed on the restricted sick leave list after their sick leave use has been reviewed on an individual basis and the following actions have been taken:

a. Establishment of an absence file.

b. Review of the absence file by the immediate supervisor and by higher levels of management.

c. Review of the quarterly listings furnished by the PDC of LWOP and sick leave used by employees. (No minimum sick leave balance is established below which the employee's sick leave record is automatically considered unsatisfactory.)

d. Supervisor's discussion of absence record with the employee.

e. Review of the subsequent quarterly listing. If listing indicates no improvement, the supervisor is to discuss the matter with the employee to include advice that if the next listing shows no improvement, the employee will be placed on restricted sick leave.

### 513.372 Notice and Listing

Supervisors provide written notice to employees that their names have been added to the restricted sick leave listing. The notice also explains that until further notice, the employees must support *all* applications for sick leave by medical documentation or other acceptable evidence (see 513.364).

Employee Benefits
Leave

ELM 12.1 Contents | Summary of Updates



513.373

### 513.373 Recision of Restriction

Supervisors review the quarterly leave listings furnished by the PDC. If there has been a substantial decrease in absences charged to sickness, the employee's name is removed from the restricted sick leave list and the employee is notified in writing of the removal.

### 513.38 Performance Ability Questioned

When the reason for an employee's sick leave is of such a nature as to raise justifiable doubt concerning the employee's ability to satisfactorily and/or safely perform duties, a *fitness-for-duty medical examination* is requested through appropriate authority. A complete report of the facts, medical and otherwise, should support the request.

## 513.4 Charging Sick Leave

### 513.41 Full-Time Employees

#### 513.411 General

   a.    Sick leave is not charged for legal holidays or for nonworkdays established by Executive Order.

   b.    Sick leave may be charged on any scheduled workday of an employee's basic workweek including Saturdays and Sundays.

#### 513.412 Minimum Unit Charge

| Employee Category | Minimum Unit Charge |
|---|---|
| a. All full-time nonexempt employees. | Hundredth of an hour (.01 hour). |
| b. Full-time exempt employees. | (See 519.71.) |
| c. Rural carriers. | 1 day (8 hours). |
| d. Substitute rural carriers (1) serving a vacant route or (2) serving in absence of rural carriers on extended leave. | 1 day (8 hours). |
| e. Triweekly rural carriers. | (See 512.54.) |

#### 513.413 Special Situations

   a.    *A–E Postmasters.* A–E postmasters are charged sick leave the same as annual leave. (See 512.52.)

   b.    *Rural Carriers.* Rural carriers who are absent because of illness on Saturdays are charged sick leave based on the computations used for their annual leave charges. (See 512.53.)

   c.    *Substitute Rural Carriers.* Substitutes who are serving a vacant rural route or who serve for a rural carrier on extended leave are charged sick leave the same as rural carriers.

   d.    *Triweekly Rural Carriers.* Triweekly rural carriers are charged sick leave the same as for annual leave. (See 512.54.)

Employee Benefits
Leave

 

513.42

## 513.42 Part-Time Employees

### 513.421 General

a. Absences due to illness are charged as sick leave on any day that an hourly rate employee is scheduled to work except national holidays.

b. Except as provided in 513.82, paid sick leave may not exceed the number of hours that the employee would have been scheduled to work, up to:

    (1) A maximum of 8 hours in any 1 day.

    (2) 40 hours in any 1 week.

    (3) 80 hours in any one pay period. If a dispute arises as to the number of hours a part-time flexible employee would have been scheduled to work, the schedule will be considered to have been equal to the average hours worked by other part-time flexible employees in the same work location on the day in question.

c. Limitations in 513.421b apply to paid sick leave only and not to a combination of sick leave and workhours. However, part-time flexible employees who have been credited with 40 hours or more of paid service (work, leave, or a combination of work and leave) in a service week are not granted sick leave during the remainder of that service week. Absences, in such cases, are treated as nonduty time which is not chargeable to paid leave of any kind. (Sick leave is not intended to be used to supplement earnings of employees.)

### 513.422 Minimum Unit Charge

| Employee Category | Minimum Unit Charge |
|---|---|
| All part-time nonexempt employees. | Hundredth of an hour (.01 hour). |
| Part-time exempt employees. | (See 519.71.) |

## 513.5 Advance Sick Leave

### 513.51 Policy

### 513.511 May Not Exceed Thirty Days

Sick leave not to exceed 30 days (240 hours) may be advanced in cases of serious disability or ailments if there is reason to believe the employee will return to duty. Sick leave may be advanced whether or not employees have annual leave to their credit.

### 513.512 Medical Document Required

Every application for advance sick leave must be supported by medical documentation of the illness.

### 513.52 Administration

### 513.521 Installation Heads' Approval

Officials in charge of installations are authorized to approve these advances without reference to higher authority.

Employee Benefits
Leave

513.522

#### 513.522 Forms Forwarded

Form 1221, *Advance Sick Leave Authorization*, is completed and forwarded
to the PDC when advance sick leave is authorized.

### 513.53 Additional Sick Leave

#### 513.531 Thirty-Day Maximum

Additional sick leave may be advanced even though liquidation of a previous
advance has not been completed, provided the advance at no time exceeds
30 days. Any advance sick leave authorized is in addition to the sick leave
which has been earned by the employee at the time the advance is
authorized.

#### 513.532 Liquidating Advance Sick Leave

The liquidation of advance sick leave is not to be confused with the
substitution of annual leave for sick leave to avoid for forfeiture of the annual
leave. Advanced sick leave may be liquidated in the following manner:

a. Charging the sick leave against the sick leave earned by the employee
as it is earned upon return to duty.

b. Charging the sick leave against an equivalent amount of annual leave,
at the employee's request if the annual leave charge is made prior to
the time such leave is forfeited because of the leave limitation
regulation.

### 513.6 Leave Charge Adjustments

#### 513.61 Insufficient Sick Leave

If sick leave is approved, but the employee does not have sufficient sick
leave to cover the absence, the difference is charged to annual leave or to
LWOP at the employee's option.

#### 513.62 Insufficient Sick and Annual Leave

If sick leave is approved for employees who have no annual or sick leave to
their credit, the absence may be charged as LWOP unless sick leave is
advanced as outlined in 513.5. LWOP so charged cannot thereafter be
converted to sick or annual leave.

#### 513.63 Disapproved Sick Leave

If sick leave is disapproved, but the absence is nevertheless warranted, the
supervisor may approve, at the employee's option, a charge to annual leave
or a charge to LWOP.

#### 513.64 Absence Without Leave

An absence which is disapproved is charged as LWOP and may be
administratively considered as AWOL.

#### 513.65 Annual Leave Changed to Sick Leave

If an employee becomes ill while on annual leave and the employee has a
sick leave balance, the absence may be charged to sick leave.

Employee Benefits
Leave

 ELM 12 1 Contents    Summary of Updates

513.7

## 513.7 Transfer or Reemployment

### 513.71 Transfer

### 513.711 Crediting

Individuals who are transferring from a federal agency to the USPS are credited with their sick leave balance provided there is not a break in service in excess of 3 years.

### 513.712 Recrediting

a. If a USPS employee transfers to a position under a different leave system, to which only a part of the employee's sick leave can be transferred, the sick leave is recredited if the individual returns to the USPS provided there is not a break in service in excess of 3 years.

b. If a USPS employee transfers to a position to which sick leave cannot be transferred, the sick leave is recredited if the individual returns to the Postal Service provided there is not a break in service in excess of 3 years.

### 513.72 Reemployment

Sick leave may be recredited upon reemployment provided there is not a break in service in excess of 3 years.

### 513.73 Reemployment — OWCP

All individuals who were originally separated and who are subsequently reemployed from a continuous period on OWCP rolls will have any previously unused sick leave recredited to their account, regardless of the length of time the employee was on OWCP and off postal rolls.

**Exception:** Sick leave may not be recredited if the employee applied and was approved for disability retirement regardless of whether the employee actually collected the annuity.

## 513.8 Retirements or Separations

### 513.81 General

No payment is made for accumulated sick leave when an employee retires or separates.

### 513.82 Retirement

### 513.821 Credit for Sick Leave

Provisions of the Civil Service Retirement law provide for the granting of credit for unused sick leave in calculating retirement or survivor annuity at the time of the employee's retirement or death. (See ELM 562.4.) Each 8 hours of sick leave represents 1 day of retirement credit. Unused sick leave days are converted to calendar time retirement credit, based on a 260-day work year (260 days x 8 hours = 2,080 hours). There are no provisions for credit of sick leave upon retirement for employees under the FERS program except for those employees who formerly were in the Civil Service Retirement System (CSRS) and trans

Employee Benefits
Leave



513.822

Employees' Retirement System (FERS), a new subchapter in the ELM, provides details for credit of sick leave upon retirement for FERS employees who formerly were under the CSRS coverage.

### 513.822 Disability Retirement

If the OPM has approved an application for disability retirement effective on expiration of accumulated and accrued leave, or if the employee is being otherwise separated for physical or mental disability resulting in inability to perform the work, sick leave is granted at the rate of 8 hours per day, 40 hours per week, or 80 hours per pay period until the employee's sick leave is exhausted. Payments may not be made, however, for any hours for which the employee received salary or leave payments from another federal agency.

### 513.83 Separation by Death

If an ill employee dies without returning to duty and without making application for sick leave, the postal official who is in charge of the installation grants sick leave for the period of illness or disability immediately prior to death. If the employee was in pay status on the day of death or immediately prior to death, the employee's beneficiary is entitled to receive compensation without charge to leave for the date of death. The latter applies whether or not employees have leave to their credit.

### 513.9 Collection for Unearned Sick Leave

Collection for used but unearned sick leave at the time of separation is made in the same manner as for unearned annual leave (See 512.72).

## 514 Leave Without Pay (LWOP)

### 514.1 Definition

a.  LWOP is an authorized absence from duty in a nonpay status.

b.  LWOP may be granted upon the employee's request and covers only those hours which the employee would normally work or for which the employee would normally be paid.

c.  LWOP is different from AWOL (absent without leave) which is a nonpay status due to a determination that no kind of leave can be granted either because (1) the employee did not obtain advance authorization or (2) the employee's request for leave was denied.

### 514.2 Policy

### 514.21 Restriction

LWOP in excess of 2 years is not approved unless specifically provided for in postal policy or regulations.

### 514.22 Administrative Discretion

Each request for LWOP is examined closely and a decision is made based on the needs of the employee, the needs of the USPS, and the cost to the

Employee Benefits
Leave



514.23

USPS. The granting of LWOP is a matter of administrative discretion. It is not
granted on the employee's demand except:

a.  A disabled veteran is entitled to LWOP, if necessary, for medical
    treatment under Executive Order 5396.

b.  A Reservist or a National Guardsman is entitled to LWOP, if necessary,
    to perform military training duties under the Vietnam Era Veterans'
    Readjustment Act of 1974. (See 38 U.S.C., section 2024.)

c.  An employee who requests and is entitled to time off under 515,
    Absences for Family Care or Serious Health Problem of Employee,
    must be allowed up to a total of 12 workweeks of absence within a
    Postal Service leave year for one or more reasons listed in 515.41.
    Leave without pay may be taken in combination with annual or sick
    leave for which the employee is qualified.

**514.23  Condition**

In granting approval for extended LWOP, there should be reasonable
expectation that the employee will return at the end of the approved period.

**514.24  Leave Credit Adjustment**

Employees who are on LWOP for a period, or periods, totaling 80 hours
(normal number of workhours in 1 pay period) during a leave year have their
leave credits reduced by the amount of leave earned in 1 pay period.

**Exception:**  Employees who (1) are in leave category 6, (2) are not on
LWOP for the entire year, and (3) whose accumulated LWOP reaches 80
hours in the last pay period in a leave year will have their leave balance
reduced by only 6 hours, even if they earn 10 hours during that pay period.
(See 512.3.)

**514.25  Other Employment**

LWOP is not granted for the purpose of enabling an employee to "try out" or
to accept other employment.

**514.3  Authority to Approve**

**514.31  Installation Head**

Installation heads may approve requests for LWOP which are not in excess
of 1 year.

**514.32  Field Division General Managers/Postmasters**

Field Division General Managers/Postmasters may approve requests for
LWOP that are not in excess of 2 years.

**514.4  Acceptable Reason and Instructions**

See Exhibit 514.4 for acceptable reasons and instructions for LWOP.

Employee Benefits
Leave

 

514.4

Exhibit 514.4 (p. 1)
Acceptable Reasons and Instructions for LWOP

| Acceptable Reasons for LWOP | Instructions |
|---|---|
| a. Personal reasons. | LWOP may be granted to cover the absence. |
| b. Employee has no leave to cover vacation during choice vacation period. | LWOP may be granted to cover the absence. |
| c. Full-time attendance at a college or university. | (1) Restricted to full-time employee.<br>(2) An official transcript of courses taken must be submitted to the installation head. |
| d. Personal illness or injury (also see 515). | (1) LWOP may be granted after accumulated accrued sick and annual leave have been exhausted; except that during a pay period in which, due to personal injury or illness, no work is performed, an employee may utilize annual and/or sick leave in conjunction with LWOP, subject to approval of the leave in accordance with normal leave approval procedures.<br>(2) A medical document from the attending physician or practitioner must be obtained before approval, the same as for sick leave.<br>(3) Applications for LWOP to cover a period in excess of 30 days in any 1 year in cases of illness or injury are reviewed and acted upon by the installation head.<br>(4) An employee normally will not be separated from the service because of absence due to personal illness or injury for a period of less than 1 year (also see 568). An employee may be separated if required to be absent for more than 1 year unless there is cause to expect recovery and return within a reasonable time after the end of 1 year in LWOP status.<br>(5) The separation of an employee after 1 year of continued absence with or without pay does not prevent an eligible employee from filing an application for retirement (also see 568). |
| e. Injury in line of duty. | (1) Supervisors must advise employees of their right to file an application for FECA benefits as a result of illness or injury that is suffered in the line of duty. (See instructions on CA-1 and CA-2a for traumatic injuries and CA-2 for occupational illnesses and diseases.)<br>(2) In traumatic injury cases, an employee is entitled to a maximum of 45 calendar days of continuation of pay (COP) without charge to leave if written notice of injury is filed within 30 days of injury. The period of COP begins at the start of the employee's first full tour of duty thereafter, or the first day following the disability, whichever occurs sooner. The period during which 45 days of COP may be claimed must begin within 90 days of the occurrence of the injury but may end after 90 days from the occurrence. If, after returning to work subsequent to an apparent recovery from a traumatic injury, an employee is again absent from work as a result of the original traumatic injury, the employee may use any remaining COP time left up to the 45-day limit. However, the remaining COP time must be used within 90 days of the date the employee first returns to work following the initial traumatic injury.<br>(3) An employee may choose sick or annual leave in lieu of COP; however, this leave may be retroactively converted to COP provided a request is made within 1 year of the date the leave was used or the date of the claim approval, whichever is later.<br>(4) Before being placed on LWOP, an employee may choose to use annual or sick leave until it is exhausted. Leave is earned during that part of a pay period in which the employee is in pay status.<br>(5) On favorable adjudication of a claim by the Office of Workers' Compensation Programs (OWCP), LWOP may be substituted for a period of sick and/or annual leave so that the employee may accept disability compensation for the period of absence.<br>(6) On favorable adjudication of a claim by OWCP, current employees are permitted to buy back the leave that they used while awaiting adjudication (see 545.73b5). If the injury is a traumatic injury, only leave used after the end of the 45-day COP period may be bought back. OWCP does not restrict the amount of leave hours an employee may buy back. However, Postal Service regulations do not permit employees to carry-over into the next leave year more than the allowable maximum number of hours of annual leave (see 512.12). When an employee buys annual leave in the previous year in an amount that exceeds the applicable maximum carry-over, such excess will be automatically forfeited. For every 80 hours of leave bought back and changed to LWOP, both annual and sick leave must be adjusted by the amount earned in a pay period. |

ELM 12, May 1989, Updated With Postal Bulletin Changes Through June 20, 1996

Employee Benefits
Leave

ELM 12.1 Contents     Summary of Updates

514.5

Exhibit 514.4 (p. 2)
Acceptable Reasons and Instructions for LWOP

| Acceptable Reasons for LWOP | Instructions |
|---|---|
| f. Family care (see 515). | An eligible employee may request and must be allowed a total of up to 12 workweeks of absence during a Postal Service leave year for one or more reasons listed in 515.41. LWOP may be taken in combination with annual or sick leave for which the employee is qualified. |
| g. Military duty for scheduled drills or for periods of training. | An employee enlisted under the Reserve Forces Act of 1955 who has completed the initial period of active duty training of not less than 3 months or more than 6 months may be granted LWOP for scheduled drills or periods of training. |
| h. Military duty for any purpose, training or otherwise. | Eligible members of the National Guard or reserve components of the Armed Forces who are ordered to active duty for training or for any other purposes, for a specified period of time not to exceed 1 year, but in excess of the total time allowable under military leave and annual leave are granted LWOP. |
| i. Employee elected to devote full-time service as a national president to an organization of supervisory or other managerial personnel (see 416.3). | (1) LWOP normally does not exceed 2 consecutive years coinciding with the elected term of office. (2) The employee requests in writing, through the appropriate management structure, that the vice president of Labor Relations grant the employee LWOP during tenure of presidency for the purpose of serving as resident president of an employee organization in Washington, D.C., in a full-time capacity. (3) If LWOP is granted, the employee continues to be eligible for appropriate fringe benefits during that period. (4) The vice president of Labor Relations reserves the right to deny the request for LWOP if it is determined that the position must be filled on a permanent basis, unencumbered by an individual on prolonged leave. |
| j. Union business. | See applicable provisions of current collective bargaining agreement. |
| k. Postmaster elected as an organization officer, other than the president. | See 519.272c and d. |

## 514.5 Forms Required

### 514.51 Form 3971

A request for LWOP is submitted by the employee on Form 3971, *Request for or Notification of Absence*. If the request for leave indicates the LWOP will extend over 30 days, a written justification and statement of reason for the desired absence is required.

### 514.52 Form 50

Form 50, *Notification of Personnel Action*, is prepared when LWOP is in excess of 30 days. See Handbook EL-301, *Processing Personnel Actions*.

Note: Handbook EL-301 is a new directive (scheduled for publication in the near future) which is a revision and replacement of Chapter 6 of former Handbook P-11, *Personnel Operations*.

Employee Benefits
Leave



515

# 515 Absence for Family Care or Serious Health Condition of Employee

## 515.1 Purpose of 515

This section provides policies to comply with the Family and Medical Leave Act of 1993. Nothing in this section is intended to limit employees' rights or benefits available under other current policies (see 511, 512, 513, 514), or collective bargaining agreements. Likewise, nothing increases the amount of paid leave beyond what is provided for under current leave policies or in any collective bargaining agreement. The conditions for authorizing the use of annual leave, sick leave, or LWOP are modified only to the extent described in this section.

## 515.2 Definitions

The following definitions apply for the purposes of the section:

a.  *Son or daughter* — biological, adopted, or foster child, stepchild, legal ward, or child who stands in the position of a son or daughter to the employee, who is under 18 years of age or who is over 18 and incapable of self-care because of mental or physical disability.

b.  *Parent* — biological parent or individual who stood in that position to the employee when the employee was a child.

c.  *Spouse* — husband or wife.

d.  *Serious health condition* — illness, injury, impairment, or physical or mental condition that involves any of the following:

   (1)  Any period of incapacity or treatment in connection with or consequent to inpatient care in a hospital, hospice, or residential medical care facility.

   (2)  Any period of incapacity requiring absence from work or regular daily activities of more than 3 calendar days, that also involves continuing treatment by (or under the supervision of) a health care provider.

   (3)  Continuing treatment by (or under the supervision of) a health care provider (a) for a chronic or long-term health condition that is incurable or so serious that, if not treated, would likely result in a period of incapacity of more than 3 days; or (b) for prenatal care.

   **Note:** Voluntary or cosmetic treatments (such as most treatments for orthodontia or acne) which are not medically necessary are not "serious health conditions," unless inpatient hospital care is required. Restorative dental surgery after an accident or removal of cancerous growths is a serious health condition provided all the other conditions are met. Treatments for allergies or stress, or for substance abuse, are serious health conditions if all the conditions of the regulations are met. Prenatal care is included as a serious health condition. Routine preventative physical examinations are excluded

Employee Benefits
Leave


ELM 12.1 Contents    Summary of Updates

515.3

e. Health care provider — doctor of medicine or osteopathy, Christian Science practitioner listed with the First Church of Christ, Scientist in Boston, MA, or other attending practitioner (see 513.364).

### 515.3 Eligibility

To request leave under this section, an employee must have been employed by the Postal Service for an accumulated total of 12 months, and must have worked a minimum of 1,250 hours during the 12-month period before the date leave begins.

### 515.4 Leave Requirements

### 515.41 Conditions

Eligible employees *must* be allowed an accumulated total of up to 12 workweeks of leave within a Postal Service leave year for one or more of the following:

a. Because of the birth of a son or daughter of the employee and in order to care for such son or daughter. Entitlement to leave for this condition expires 1 year after the birth.

b. Because of the placement of a son or daughter with the employee for adoption or foster care. Entitlement to leave for this condition expires 1 year after the placement.

c. In order to care for the spouse, son, daughter, or parent of the employee if the spouse, son, daughter, or parent has a serious health condition.

d. Because of a serious health condition that makes the employee unable to perform the functions of the employee's position.

### 515.42 Leave Type

Absences approved under this section are charged as annual leave, sick leave, or leave without pay, or a combination of these. Leave is charged consistent with current leave policies and applicable collective bargaining agreements. Approving officials should note "FMLA" in the approval block of the Form 3971, *Request for or Notification of Absence.*

### 515.43 Authorized Hours

Under this section, full-time employees, are entitled to up to 480 hours of leave (i.e., 12 weeks times 40 hours per week) within a leave year. Employees with weekly schedules of less than 40 hours are entitled to 12 times the number of hours normally scheduled in their workweek. For example, a part-time employee with a normal schedule of 30 hours a week is entitled to 360 hours (12 weeks times 30 hours). A part-time employee who does not have a normal weekly schedule is entitled to the total number of hours worked in the previous 12 weeks, not including overtime hours. Leave in addition to the 12 workweeks authorized under this section may be granted in accordance with other leave policies or collective bargaining agreements (see 511, 512, 513, 514).



ELM 12.1 Contents    Summary of Updates

515.5

## 515.5 Documentation

### 515.51 General

An employee must provide a Form 3971, *Request for or Notification of Absence*, together with documentation supporting the request, at least 30 days before the absence if the need for the leave is foreseeable. If 30 days notice is not practicable, notice must be given as soon as practicable. Ordinarily at least verbal notification should be given within 1 or 2 business days of when the need for leave becomes known to the employee. The employee will be provided a notice detailing the specific expectations and obligations and consequences of a failure to meet these obligations. Additional documentation may be requested, which must be provided within 15 days or as soon as practical under the particular facts and circumstances. During an absence, the employee must keep his or her supervisor informed of intentions to return to work and of status changes which could affect his or her ability to return to work. Failure to provide documentation can result in the denial of family and medical leave under this section.

### 515.52 New Son or Daughter

An employee requesting time off because of the birth of the employee's son or daughter and to care for the son or daughter, or because of the placement of a son or daughter with the employee for adoption or foster care, may be required to provide the birth or placement date.

### 515.53 Care of Others for Medical Reasons

An employee requesting time off to care for a spouse, parent, son, or daughter who has a serious health condition may be required to provide documentation from the health care provider stating the date the serious health condition began, probable duration of the illness, appropriate medical facts, and when the employee will be needed to provide such care or psychological support. When the request is to care for someone other than a biological parent or child, appropriate explanation of the relationship may be required.

### 515.54 Additional Medical Opinions

A second medical opinion by a health care provider who is designated and paid for by the Postal Service may be required. In case of a difference between the original and second opinion, a third opinion by a health care provider may be required. The third health care provider is jointly designated or approved by management and the employee, and the third opinion is final. The Postal Service pays the health care provider for the third opinion. A health care provider selected for the second or third opinion may not be employed by the Postal Service on a regular basis. Recertifications of a medical condition may also be required during absences.

### 515.55 Employee Incapacitation

An employee requesting ti...

ELM 12.1 Contents    Summary of Updates

515.6

21 calendar days, evidence of ability to return to work with or without limitations must be submitted. If additional medical opinions are required, they are administered as described in 515.54.

## 515.6 Intermittent Leave or Reduced Schedule

### 515.61 New Son or Daughter

Leave requested because of the birth of the employee's son or daughter and to care for the son or daughter or because of the placement of a son or daughter with the employee for adoption or foster care may be taken on an intermittent basis or by establishing a reduced work schedule only if the request for such intermittent leave or schedule modification is approved. Approval is based on employee need, Postal Service need, and costs to the Postal Service.

### 515.62 Care of Others for Medical Reasons or Employee Incapacitation

Leave requested to care for a spouse, son, daughter, or parent with a serious health condition or due to the employee's health condition may be taken on an intermittent basis or by establishing a reduced work schedule when medically necessary.

### 515.63 Temporary Change in Duty Assignment

If an employee requests intermittent leave or a reduced work schedule, the Postal Service may assign the employee, with equivalent pay and benefits, temporarily to the duties of another position consistent with applicable collective bargaining agreements and regulations if such an assignment better accommodates the recurring periods of absence.

### 515.64 FLSA Status

An employee exempt from the Fair Labor Standards Act (FLSA) normally may not take leave in less than 1-day increments. However, leave taken under this section on an intermittent basis or by temporarily establishing a reduced work schedule can be taken in less than 1-day increments without affecting the employee's FLSA-exempt status.

## 515.7 Return to Position

Employees taking leave under this section are entitled to return to their positions held when leave began, or to equivalent positions with equivalent pay, benefits, working conditions, and other terms of employment. Returning employees are not entitled to any right, benefit, or position which they would not have been entitled had they not taken the leave, or to intangible, unmeasurable aspects of the job such as the perceived loss of potential for future promotional opportunities. If an employee was hired for a specific term or only to perform work on a discrete project, then there is no further reinstatement obligation under this section if the employment term or project is over and the employment would not have otherwise continued.

22

# ATTACHMENT #4

## Respondent (USPS) Notice Of Proposed Of Removal, Dated April 24th, 1996



23

UNITED STATES POSTAL SERVICE
CHICAGO BULK MAIL CENTER
7500 W. ROOSEVELT ROAD
FOREST PARK, ILLINOIS 60130-2296

April 24, 1996
SUBJECT: "NOTICE OF PROPOSED OF REMOVAL"

Durr, S.
EMPLOYEE'S NAME

SOCIAL SECURITY
Regular Mailhandler
JOB TITLE P/L 234

This is notice that it is proposed to remove you from the Postal Service no sooner than thirty (30) days from the receipt of this notice. This action is based on the following reason:

# "ABSENT WITHOUT OFFICIAL LEAVE (AWOL)"

Specifically: You have been in an AWOL (Absent Without Official Leave) status since January 16, 1996.

As a preference eligible employee, you have the following rights:

You may review the material relied on to support these reasons at the CHICAGO BULK MAIL CENTER. If you do not understand the reason for the notice, contact the undersigned for further information. You may answer the notice personally an in writing, or both, to **MANAGER IN-PLANT SUPPORT, ROOM 351, 2nd Floor CHICAGO BULK MAIL CENTER from 8:00 a.m. to 4:30 p.m.** and may submit affidavits in support of your answer.

If this action is overturned on appeal, back pay will be allowed, unless otherwise specified in the appropriate award or decision, **ONLY IF YOU HAVE MADE A REASONABLE EFFORT TO OBTAIN OTHER EMPLOYMENT DURING THE RELEVANT NON-WORK PERIOD".**

Certified : Z 154 567 095        000003

Fax

24

-2-

April 24, 1996
SUBJECT: "NOTICE OF PROPOSED OF REMOVAL"

Durr, S.
EMPLOYEE'S NAME

SOCIAL SECURITY
Regular Mailhandler
JOB TITLE P/L 234

You have the right to file a grievance under the Grievance/Arbitration procedure set
forth in Article 15, Section-2 of the 1990 National Agreement within Fourteen (14)
days of your receipt of this notice.

*Michael Hooper For Q. Kinta*
Signature of Supervisor

*Clinton Larry*
Concurring Official

K. Kuntu
Name of Supervisor (printed)

Certified# Z 154 567 065

C. Larry
Concurring Official (printed)

# ATTACHMENT # 5

## Employee And Labor Relations Manual (ELM) 12.1, Chapter 3, Section 365.14



# 360 Other Personnel Actions

360

## 361 General Considerations

All personnel actions within the Postal Service are effected, without
discrimination because of race, color, religion, sex, age, national origin,
political affiliation, marital status, or physical impairment (provided that the
duties of the position involved may be efficiently performed by the person
with the physical impairment). Equal opportunity for position changes and
advancement is based on merit, applicable experience, skills, and physical
requirements of the duties for the vacancy being filled. Postal officials
concentrate on the effective and efficient utilization of employee skills and
potentials available to the Postal Service.

## 362 Change to Lower Grade

### 362.1 Purpose and Authority

Changes are initiated on the application of the employee or at the request of
the installation head. Postal officials who are not authorized to take final
action provide recommendations to higher authority.

### 362.2 When Change to Lower Grade May Be Made

#### 362.21 At Request of Employee

Employees may be changed to a position of lower grade at their own
request, without regard for adverse action procedures, when their written
request establishes that the change is made solely for personal reasons and
in their own interest. Employees' written requests are made a permanent part
of their official personnel folders. The request must contain the following
facts and circumstances:

a. That the employee and not the postal official initiated the request for
   the reduction;

b. That the postal official, or any superior, has not exercised any
   pressure; and

c. That employees fully understand the transaction and consider the
   reduction to be in their own self-interest and benefit.

**Note:** A separate written request is not necessary when a change to lower
grade is made as a result of bidding procedures, e.g., T6 to Lv5 city carrier.

#### 362.22 Because of Performance

When an employee's performance in current position is unsatisfactory due to
the employee's own fault or inability to do the work, a change to another
position in a lower grade may be made to place the employee in a position
where she or he can reasonably be expected to adequately perform. The
change is preceded by a written notice prepared in compliance with the
adverse action procedure.

Employment and Placement
Other Personnel Actions

 

362.23

### 362.23 Relegation of a Post Office

A change to a lower grade resulting from relegation of a post office must be in accordance with the adverse action procedures. See 650 for nonbargaining unit employees. See the appropriate collective-bargaining agreement for bargaining unit employees.

### 362.24 Realignments

In organizational realignments, management may offer a lower grade position. Although the offer is management-initiated, the change, if voluntarily accepted by the employee, may not be processed as an adverse action.

### 362.3 Restrictions on Change to Lower Grade

To fill a position by change to lower grade, the following requirements must be met:

a. The employee must meet the physical standards for the new position. See 313.3, for more complete information, including waivers for physically impaired employees.

b. If employees have not completed probation, they must complete the probation in their new position.

c. The employee must meet any experience and training standards for the position and any performance test set for entry into the position; e.g., the motor vehicle operator's examination unless waived under 354.236.

## 363 Conversions

### 363.1 Definition

Conversion refers to the process of reaching an employee, on a register of eligibles, who is serving under a casual, temporary, or excepted appointment and changing the employee to a career appointment.

### 363.2 Conversion to Career Appointment

If the conversion is based on proper selection of an employee whose name is currently within reach on a Postal Service eligibility list, the certificate from which selection is made constitutes authority for the conversion.

### 363.3 Restrictions on Conversion to Career Appointment

### 363.31 Vacancies

There must be a permanent vacancy to which an employee may be assigned in order to be converted to a career appointment. Conversion cannot be effected if the employee is serving in a temporary vacancy incident to another employee's absence on military furlough or incident to a transfer to defense activity with reemployment rights.

## 363.32 Members of Family Requirement

Restrictions regarding members of family which are applicable to appointments are equally applicable to conversion. See Handbook EL-311, *Personnel Operations*, section 312.3, Restrictions on Employment of Relatives. (This handbook replaces Chapters 1–5 of the former P-11.)

## 363.33 Positions Reserved for Veterans

An employee who is not entitled to veteran's preference may be converted to career status in a position reserved for veterans only in special circumstances. See EL-311, section 262.1.

## 363.34 Medical Evidence

Satisfactory medical evidence is required for all career appointments.

## 363.35 Disqualifications

Any law, executive order, or postal regulation which disqualifies an employee for original appointment also disqualifies the employee for conversion.

## 363.36 Temporaries or Casuals Qualified for Reinstatement

A temporary or casual who meets the requirements for reinstatement may be considered and recommended for conversion to career status provided there is a vacancy to which the employee may be assigned.

## 363.4 Retirement Coverage

### 363.41 Social Security

Employees serving in temporary or casual positions are covered by Social Security — Old Age and Survivors' Insurance (see 530).

### 363.42 Federal Employees Retirement System

Persons receiving career appointments are automatically covered by the Federal Employees Retirement System (FERS) unless they qualify for and elect, based on prior federal or Postal Service, to remain covered by the Civil Service Retirement Act (see 520).

## 364 Other Changes

### 364.1 Name Changes

### 364.11 Name on Records

The name by which an employee is known must be the one used on the application for employment or that which appears on a subsequent Form 50, *Notification of Personnel Action*, on which the employee's name is officially changed in the records of the Postal Service.

### 364.12 Requests for Name Changes

In all cases where an employee requests to be known by a name other than the one appearing on Postal Service Records, including female employees

364.13

reverting to a maiden name, the request is approved provided that it is supported by:

a.  A written statement that the employee intends to use the requested name in all matters concerning the Postal Service and;

b.  Appropriate evidence that the use of the requested name will not be for fraudulent purposes. Such evidence is normally a copy of a judicial order granting a name change, or a notarized affidavit that the use of the requested name will not be for an illegal, improper, or fraudulent purpose.

### 364.13 Processing

In all cases involving a name change, nature of action code 780 and the associated procedures are used in processing the personnel action. All documents supporting the requested change are filed as permanent records in the official personnel folder immediately below the Form 50 which effects the name change.

### 364.2 Address Change

An address change is a change in the mailing address of an employee. Form 1216, *Employee's Current Mailing Address*, is required to change the official mailing address.

### 364.3 Change in Title

A change in title is a change in the title of the position resulting from an administrative action, not involving a change to a higher level, a change to lower level, or a change of duties. If the position is occupied, personnel action (Form 50) is necessary.

### 364.4 Changes in Duty Status

### 364.41 Definition

Changes in duty status are changes which place employees in a nonpay status or return them to active duty and pay status. These changes are shown in 364.42 to 364.47.

### 364.42 Leave Without Pay (LWOP)

A temporary nonpay status and absence from duty granted, when appropriate, as a result of an employee's request (does not include time spent in military service).

### 364.43 Suspension

A temporary nonpay status and absence from duty for disciplinary or other reasons. If the suspension is for a specific period, the personnel action forms specify the exact number of days and dates of suspension.

### 364.44 Separation — Military

(See 366.23.)

### 364.45 Absence Without Leave (AWOL)

A temporary nonpay status and absence from duty without appropriate authorization.

### 364.46 Return to Duty

A return to active duty and pay status from LWOP in excess of 30 days or suspension for security reasons.

### 364.47 Remarks

On the personnel action forms under remarks, indicate the authority for effecting the change action. The personnel action form should also show the reason for the action taken.

## 364.5 Changes Affecting Compensation

### 364.51 Inclusions

Changes affecting compensation are those which change an employee's base pay with no change of position or title (see Chapter 4).

### 364.52 Processing Personnel Action Forms

See Handbook EL-301, *Processing Personnel Actions.* (This handbook, which will be published in the near future, is Chapter 6 of former Handbook P-11.)

# 365 Separation

## 365.1 Administrative Considerations

### 365.11 Definition

*Separations* are personnel actions that result in employees' being removed from the rolls of the Postal Service.

### 365.12 Effective Date of Separation

The effective date of separation is the last day the employee is carried on the rolls. It is not changed by the fact that an employee is given a lump-sum payment for leave.

### 365.13 Standard Terminology

A separation from the service must be identified by the prescribed term. Care must be taken to use the term appropriate to the case, i.e., *death, removal, resignation,* etc. Standard procedures and terminology must be used in preparing personnel action forms.

### 365.14 Veterans Rights

The Veterans' Preference Act provides certain procedures and rights to veterans that must be observed in processing involuntary separations of preference eligibles.

Employment and Placement
Other Personnel Actions

ELM 12.1 Contents    Summary of Updates

365.15

### 365.15 Notice to Federal Employee About Unemployment Insurance

An employee separated for any reason must be furnished SF 8, *Notice to Federal Employee About Unemployment Insurance*, and information regarding application for unemployment compensation. (See subchapter 550.)

### 365.16 Exit Interview

All employees voluntarily separated are interviewed. The exit interview gives management the opportunity to:

a. Determine the true reasons why employees wish to leave the Postal Service.

b. Retain the services of competent employees when a satisfactory solution of their grievances or problems can be found.

c. Correct controllable causes of employee turnover.

### 365.17 Accountable Property Clearance

### 365.171 Applicability

These procedures apply to all postal employees (except Inspection Service employees and postmasters for whom additional procedures are prescribed) and are in addition to prescribed exit interview procedures.

### 365.172 When to Take Action

When an employee separates from the service, the losing installation systematically collects all accountable items from the employee. The PDC director inaugurates clearance for overdrawn leave, travel advances, and other U.S. indebtedness for which the employee is accountable.

### 365.173 Form to Be Used

Form 337, *Clearance Record for Separated Employee*, is used to certify that necessary clearance action was taken in the employing installation.

### 365.174 Preparation and Routing

As soon as employees submit notices of separation, Forms 337 are originated by the personnel officer and routed to the property officer who arranges for return of the accountable items. Property officers should use the telephone for clearance unless circumstances make written signatures desirable. Clearance should be completed before the close of day the employee is last in a duty status. When all accountable items are returned and in a condition satisfactory to the property officer, Form 337 is certified and filed in the employee's personnel folder.

### 365.2 Separations — Voluntary

### 365.21 Resignation

### 365.211 Definition of Resignation (RESIG)

*Resignation* is a separation at the employee's request. Employees may resign at their discretion; this includes application for optional retirement. Resignations must be accepted and are binding once submitted. However, employees may be permitted to withdraw their resignation request provided

the request to withdraw is made before the effective date of the resignation. Denial of an employee's request must be based on a valid reason and such reason should be explained to the employee before the effective date of the resignation. Administrative disruption or the hiring of a replacement before a request for withdrawal is made are appropriate reasons for such denial. A desire to avoid taking adverse action is not an appropriate reason for denying an employee's request.

## 365.212 To Avoid Separation "For Cause"

If employees submit a resignation after having been notified, either orally or in writing, that adverse action is being initiated proposing their removal, change to lower grade, or suspension for reasons furnished them, the resignation must be accepted. Resignation must also be accepted if employees received a written notice of decision to separate them for reasons given in a notice of decision. The reason (if any) given by the employee for resigning is shown under remarks on the personnel action form, with one of the following statements which best describes the circumstances:

a.  Resigned after being orally informed on (*date*) that action is being initiated proposing to (*separate, demote, or suspend*) him or her for (*reason*).

b.  Resigned after receiving written notice proposing to (*separate, demote, or suspend*) him or her for (*reason*).

c.  Resigned after receiving written notice of decision to (*separate, demote, or suspend*) him or her for (*reason*).

## 365.213 Because of Illness

The following policies apply in cases of resignation caused by illness:

a.  *5 Years or More of Service.* Employees covered by the Civil Service Retirement System with 5 or more years of civilian service who resign because of illness must be advised of their eligibility to apply for a disability retirement.

b.  *Less than 5 Years of Service.* Civil Service Retirement System employees with less than 5 years of service who resign because of illness must furnish medical evidence supporting their claim to the installation head at the time of separation if their seniority on reinstatement is to be restored. The existence of such evidence should be annotated on the separation Form 50. The evidence itself is forwarded to the appropriate USPS medical officer for retention.

c.  *18 months or more of service.* Employees covered by the Federal Employees' Retirement System with 18 months or more of creditable civilian service must be advised of their eligibility to apply for a disability retirement.

d.  *Less than 18 months of service.* Employees covered by the Federal Employees Retirement System who have less than 18 months of creditable civilian service must be processed in accordance with b.

## 365.214 Notice and Acceptance

The following policies apply regarding notice and acceptance of resignations:

a. *Written Resignation.* Resignations should be submitted in writing. The employee specifies the reason and effective date. Whenever possible, written notice of resignation is given at least 2 weeks before the anticipated last day of work. Resignations are delivered by employees directly to their immediate supervisors for transmission to the appointing official. Any action to compel employees to remain beyond the date specified by them is without authority.

b. *Oral Resignation.* If employees decline to submit written resignations, their oral resignations must be accepted, preferably in the presence of witnesses. The supervisor or other official who receives an oral resignation records the date received, the reason given, the effective date, and the names of any witnesses. This record, signed by the supervisor, is placed in the employee's official personnel folder as a permanent record. A copy of this record is sent to the affected employee with the employee copy of the resignation Form 50.

c. *Reason for Resignation.* The reason for a resignation should be clearly stated in either a written or oral resignation. If the employee fails to give a reason for resignation, the supervisor enters the reason she or he believes the employee resigned.

d. *Effective Date.* When the employee sets an effective date of resignation to include a period of unapproved leave, the unauthorized absence may be charged to either earned annual leave or LWOP at the discretion of the appointing officer. The employee is informed of the decision and given the opportunity to change the effective date. If the employee is resigning in lieu of an involuntary separation, he or she may not set an effective date for resignation that will occur after the effective date for the involuntary separation.

## 365.22 Separation-Transfer (S-Trans)

### 365.221 Definition

*Separation-transfer* is an action by which career employees are taken off the rolls of a postal installation to permit their appointments to positions in another federal agency without a break in service. This term is not applicable to the movement of an employee from one postal installation to another. Resignation by the person transferring is not necessary and no resignation is requested.

### 365.222 Effective Date

Employees who notify the appointing officers of their pending transfer may be carried in an annual leave (or nonpay, if no annual leave is due) status between the last workday in the postal installation and the entrance on duty in the other agency. No action is taken until notice of their employment has been received from the gaining agency. The personnel action form is then prepared effective as of the close of business the day before their entrance on duty date at the new activity.

34


### 365.223 Replying to Requests for Suitability Information

When another government agency requests information on the suitability of an employee transferring from the Postal Service, relevant information contained in USPS records is furnished in such a manner as to safeguard its confidential nature and to protect confidential sources.

## 365.23 Separation-Military (S-Mil)

### 365.231 Definition

*Separation-Military* is a separation required when an employee goes on full-time active duty in the military service or when any member of a reserve component of the U.S. Armed Forces goes on an initial period of active, full-time duty for training of not less than 3 consecutive months, pursuant to official orders.

### 365.232 Effective Date

Use the first date the employee is in a nonpay status.

### 365.233 Postal Official Action at Time Employee Leaves

a. Specifically identify the position the employee is leaving and the type of appointment from which the employee is being separated.

b. Ascertain whether the employee desires to receive payment for accrued annual leave.

c. Notify employees of their retirement refund rights, if any. Advise them that if they obtain their retirement refund, they will have no coverage under the retirement system, including death benefits, while they are on active military duty.

d. Notify employees of their insurance rights, if any.

e. Do not separate an employee who is, by induction or otherwise, considering going on active duty in the military service, or going on an initial period of active duty for training of 3 months or more in accordance with the Reserve Forces Act of 1955, until it is definitely determined by the military authorities whether the employee is accepted or rejected for active duty. During the interim, if employees must take their physical examination for entry into the armed forces at a time when scheduled for duty, excuse them with pay and without charge to annual leave for the time necessary to take the examination.

f. Explain to employees their restoration rights on discharge from the military service.

### 365.234 Restoration After Military Service

a. *Employee Inducted.* Employees inducted for training and service are entitled to restoration when they:

(1) Satisfactorily complete the training and service and receive a certificate to that effect; and

(2) Apply for restoration within 90 days of release either from military training and service or discharge from hospitalization which continued for no more than 1 year immediately following release from training or service.

b. **Employee Enlisted.** Employees who enlist after entering the employment to which they claim restoration (other than in a reserve component) are entitled to restoration when they:

(1) Serve no more than 5 years, provided that service in excess of 4 years is at the request and for the convenience of the federal government (plus additional service imposed pursuant to law);

(2) Are released from service under honorable conditions; and

(3) Apply for restoration within 90 days of release from service or discharge from hospitalization which continued for no more than 1 year immediately following release from service.

c. **Employee Ordered to Active Duty.** Employees who are ordered to active duty in the armed forces or the Public Health Service (except for determination of physical fitness or for training), voluntarily or not, after entering the employment to which they claim restoration, are entitled to restoration when they:

(1) Serve no more than 4 years plus (a) additional service in which they were unable to obtain orders relieving them from active duty and (b) additional service under the conditions in section 9(g)(2)(B) of the Military Selective Service Act of 1967, as amended, which provides as follows:

> Any member of a Reserve component of the Armed Forces of the United States who voluntarily or involuntarily enters upon active duty (other than for the purpose of determining his or her physical fitness and other than for training) or whose active duty is voluntarily or involuntarily extended during a period when the President is authorized to order units of the Ready Reserve or members of a Reserve component to active duty has the service limitations governing eligibility for reemployment rights under paragraph (2)(A) of this subsection extended by the individual's period of such active duty, but not to exceed that period of active duty to which the President is authorized to order units of the Ready Reserve or members of a Reserve component: Provided, that with respect to a member who voluntarily enters upon active duty or whose active duty is voluntarily extended the provisions of this paragraph apply only when such additional active duty is at the request and for the convenience of the federal government.

(2) Apply for restoration within 90 days of release from active duty under honorable conditions or discharge from hospitalization which has continued for no more than 1 year immediately following release from active duty.

d.  **Employee Ordered to Initial Period of Active Duty for Training.**
Employees who are members of a reserve component and are ordered
to an initial period of active duty for training of not less than 12
consecutive weeks (release in less than 12 weeks for reasons beyond
the employees' control does not affect their restoration right) are
entitled to restoration when they:

(1)  Are released from that active duty after satisfactory service; and

(2)  Apply for restoration within 31 days after that release or within
the earlier of (a) 31 days after discharge from hospitalization
incident to that active duty or (b) 1 year of their scheduled
release from that duty.

**Note:** This includes members of the National Guard whose period of
initial active duty for training is full-time training or other full-time duty
performed under sections 316, 502, 503, 504, or 505 of Title 32, United
States Code.

## 365.24 Separation, Retirement

See 520.

## 365.25 Separation, Abandonment of Position

Separation for abandonment of position is no longer used. Employees, who
formerly would have been separated for this reason, are removed for AWOL.
See 365.31.

## 365.3 Separations — Involuntary

### 365.31 Removal (REM)

### 365.311 Definition

*Removal* is an action involuntarily separating an employee, other than an
employee serving under a temporary or casual appointment, or a career
employee who has not completed the applicable probationary period, for
cause.

### 365.312 Procedure

a.  Bargaining unit employees follow the discipline procedures specified in
the appropriate collective-bargaining agreement.

b.  Nonbargaining unit employees follow the discipline procedures
specified in 650.

c.  Employees currently serving a probationary period (see 365.32).

d.  Temporary and casual employees (see 365.33).

### 365.313 Effective Date

The effective date is the date designated by the official making the decision
but is not before the expiration of the required time limit for the notice period.

Employment and Placement
Other Personnel Actions

ELM 12.1 Contents    Summary of Updates

365.32

### 365.32 Separation-Disqualification (S-Disqual)

#### 365.321 Applicability

This type of separation applies only to employees who have not completed their probationary period, except where the separation is caused by a finding that employees who have completed the probationary period have failed to meet certain conditions attached to their appointment.

#### 365.322 Reasons for Action

*Separation by disqualification* results from the failure to meet conditions specified at the time of appointment (such as failure to qualify in investigation or failure to qualify by conduct or capacity during the probationary period) or it may result from information which, if known at the time of appointment, would have disqualified the employee for the appointment.

#### 365.323 Probationary Period

*Separation-disqualification* must be effected during the probationary period except as provided in 365.321. Action is initiated at any time in the probationary period when it becomes apparent that the employee is lacking in fitness and capacity for efficient service. Any separation based on disqualification not effected during the probationary period, as provided in 365.321, even though the action is based on unsatisfactory performance during the probationary period, must be effected as a removal.

#### 365.324 Physical or Mental Disability During Probationary Period

Even though employees were approved for appointment as far as physical condition is concerned, they may be separated for failure to qualify during the probationary period if their physical or mental condition renders them incapable of performing duties efficiently and without hazard to self and others. If practicable, employees are assigned to other positions where the physical defects would not impair efficiency or be hazardous to self or others. If such assignment cannot be made, action is taken to separate the employee by disqualification. Before making a final decision, the appointing official obtains medical advice, if possible.

#### 365.325 Who Initiates Action

Supervisors may recommend separation-disqualification, but such recommendations must be referred for decision to the official having authority to take the action.

#### 365.326 Procedure in Separating

If an appointing official decides to terminate an employee who is serving a probationary period due to conditions arising prior to appointment, or because work performance or conduct during this period fails to demonstrate fitness or qualification for continued postal employment, the employee's services are terminated by notifying the employee in writing why she or he is being terminated and the effective date of the action. The information in the notice regarding the termination must, at a minimum, consist of the appointing official's conclusions as to the inadequacies of performance or conduct.

Employment and Placement
Other Personnel Actions

ELM 12.1 Contents    Summary of Updates

365.327

## 365.327 Effective Date

The effective date of separation by disqualification must be before the end of the probationary period but may not be retroactively effective. The notice of separation must be given to the employee before the end of the probationary or trial period.

## 365.33 Termination or Separation of Temporary or Casual Employees

An employee serving under a temporary or casual appointment may be separated at any time on notice in writing. In determining the proper action for a particular case, the following criteria are used:

a.  *Separation* is the term used to discontinue the services of a temporary or casual employee because of inefficiency, poor deportment, or other deficiencies personal to the employee that warrant removal from the Postal Service.

b.  *Termination* is the term used to separate an employee serving under a temporary or casual appointment whose services are no longer required, or to separate a temporary or casual employee for any reason not specifically covered by another type of personnel action.

## 365.34 Separation-Disability (S-Disab)

### 365.341 Definition

*Separation for disability* is the separation of an employee other than a temporary, casual, or a probationary employee whose mental or physical condition renders the employee incapable of performing the duties of the position and who is ineligible for disability retirement.

### 365.342 Applicability

a.  Employees not eligible for disability retirement may be separated for disability if they are considered a hazard to self or to others or if they can no longer perform the duties of the position.

b.  Placement of employees with partial disability is attempted through reassignment to positions in which they can perform satisfactorily without being a hazard to themselves or others.

c.  At the expiration of 1 year's continuous absence without pay, an employee who has been absent because of illness may be separated for disability. This action is not mandatory, however, and if there is reason to believe the employee will recover within a reasonable length of time beyond the 1 year period. the employee may be granted additional leave in 30-day periods, not to exceed 90 days. If the employee's condition indicates that LWOP beyond that period is necessary incident to full recovery, the postal official must submit a comprehensive report to the Regional Director, Human Resources, with appropriate recommendation and retain the employee on the rolls pending a decision.

d.  If an employee on the rolls of the Office of Workers' Compensation Programs (OWCP) is unable to return to work at the end of the initial 1-year period of LWOP, the LWOP may be extended for successive additional periods of up to 6 months each. Extensions are granted only

if it appears likely that the employee will be able to return to work within the period of the extension. If it does not appear likely that the employee will be able to return to work during the period, the employee, upon approval of the regional General Manager, Employee Relations, is separated subject to reemployment rights.

e. Before any employee on the rolls of the OWCP can be separated, the requesting postal official must submit a comprehensive report through channels to the regional General Manager, Employee Relations, with appropriate recommendations. The employee must be retained on the rolls of the Postal Service pending a decision.

f. If the request is approved by the region, and if the employee has sufficient service for entitlement to retirement, the employee is not separated until given an opportunity to retire. For involuntary separation, the notice and appeal procedures outlined in subchapter 650 or the applicable collective-bargaining agreement, whichever is appropriate, is followed.

g. An employee who is eligible for disability retirement but chooses not to apply is not separated for physical disability until a complete medical report has been received and the employee has received retirement counseling.

h. An employee who is eligible for disability retirement is not separated for mental disability. Rather, the appointing officer files an application for disability retirement on the employee's behalf provided the requirements are met (see 568 and 588).

### 365.343 Notice to Employee

No employees who have completed their trial or probationary period are separated for disability until given a notice in writing of the proposed action and an opportunity to reply in accordance with the appropriate adverse action procedure. A letter to a sick employee should be as diplomatic as possible. Employees eligible for disability retirement are so advised and notified that, unless they file application for disability retirement within 1 year of separation, their rights will lapse.

### 365.344 Effective Date

Separation-disability is effective on the date determined by the appointing official or on the date authoritative notice is received in the case of legal incompetence. If unused sick leave remains to the employee's credit, the effective date may be extended to permit payment for the unused sick leave. If an annuity is involved, an employee may wish to evaluate an earlier annuity payment against the unused sick leave. Separations for disability may not be effected retroactively or before the date of expiration of the time specified in the notice.

### 365.35 Separation, Reduction in Force (RIF)

The Postal Service procedure for effecting reductions in force parallels the OPM procedure. The Postal Service attempts to make personnel adjustments by various administrative actions other than reduction in force. If these actions are not adequate, however, and reduction in force appears to



be appropriate, prior approval for such action must be obtained, through channels, from the SAPMG, Human Resources.

### 365.36 Death

### 365.361 Proof of Death

No action is taken to process the separation until credible evidence of death is received. Evidence of death is filed in the deceased employee's official personnel folder. The time and date of a postmaster's death should be reported immediately to the Regional Postmaster General and the SAPMG, Human Resources.

### 365.362 Effective Date

The effective date of separation is the date of the employee's death. Personnel action forms also show the last day the employee was in a pay status.

### 365.363 Letter of Condolence

The appropriate postal official prepares a brief letter of condolence with a simple expression of sympathy, a brief reference to any appropriate qualities of the deceased, and an offer of assistance in filing claims for any funds to the deceased employee's credit.

## 366 Appeals from Involuntary Personnel Actions

### 366.1 Bargaining Unit Employees

Employees subject to the provisions of a collective-bargaining agreement may grieve involuntary personnel actions which they believe to be improper through the grievance procedure of the appropriate agreement.

### 366.2 Nonbargaining Unit Employees

Employees who are not subject to the provisions of a collective-bargaining agreement and who are otherwise eligible may appeal involuntary personnel actions which they believe to be improper under the provisions of, and to the extent provided by, subchapter 650.

### 366.3 Veteran Preference Eligible Employees

Bargaining unit and nonbargaining unit employees who are entitled to veteran preference, as that term is defined in part 241 of Handbook EL-311, may appeal involuntary removals, suspensions of more than 14 days, and reductions in grade or pay to the Merit Systems Protection Board.

# ATTACHMENT #.6

## Title 5 Of The Code Federal Regulations, Sections 432.104, 105

42

LII > Electronic Code of Federal Regulations (e-CFR)
> Title 5 - Administrative Personnel
> CHAPTER I - OFFICE OF PERSONNEL MANAGEMENT
> SUBCHAPTER B - CIVIL SERVICE REGULATIONS
> PART 432 - PERFORMANCE BASED REDUCTION IN GRADE AND REMOVAL ACTIONS
> **§ 432.104 Addressing unacceptable performance.**

# 5 CFR § 432.104 - Addressing unacceptable performance.

CFR

## § 432.104 Addressing unacceptable performance.

Link to an amendment published at 87 FR 67782, Nov. 10, 2022.

At any time during the performance appraisal cycle that an employee's performance is determined to be unacceptable in one or more critical elements, the agency shall notify the employee of the critical element(s) for which performance is unacceptable and inform the employee of the performance requirement(s) or standard(s) that must be attained in order to demonstrate acceptable performance in his or her position. The agency should also inform the employee that unless his or her performance in the critical element(s) improves to and is sustained at an acceptable level, the employee may be reduced in grade or removed. For each critical element in which the employee's performance is unacceptable, the agency shall afford the employee a reasonable opportunity to demonstrate acceptable performance, commensurate with the duties and responsibilities of the employee's position. The requirement described in 5 U.S.C. 4302(c)(5) refers only to that formal assistance

43

provided during the period wherein an employee is provided with an opportunity to demonstrate acceptable performance, as referenced in 5 U.S.C. 4302(c)(6). The nature of assistance provided is in the sole and exclusive discretion of the agency. No additional performance assistance period or similar informal period shall be provided prior to or in addition to the opportunity period provided under this section.

[85 FR 65982, Oct. 16, 2020]

💼 CFR Toolbox

Law about... Articles from Wex
Table of Popular Names
Parallel Table of Authorities

10

44

LII > Electronic Code of Federal Regulations (e-CFR)
> Title 5 - Administrative Personnel
> CHAPTER I - OFFICE OF PERSONNEL MANAGEMENT
> SUBCHAPTER B - CIVIL SERVICE REGULATIONS
> PART 432 - PERFORMANCE BASED REDUCTION IN GRADE AND REMOVAL ACTIONS
> § 432.105 Proposing and taking action based on unacceptable performance.

# 5 CFR § 432.105 - Proposing and taking action based on unacceptable performance.

CFR

## § 432.105 Proposing and taking action based on unacceptable performance.

Link to an amendment published at 87 FR 67782, Nov. 10, 2022.

(a) *Proposing action based on unacceptable performance.*

(1) Once an employee has been afforded a reasonable opportunity to demonstrate acceptable performance pursuant to § 432.104, an agency may propose a reduction-in-grade or removal action if the employee's performance during or following the opportunity to demonstrate acceptable performance is unacceptable in one or more of the critical elements for which the employee was afforded an opportunity to demonstrate acceptable performance. For the purposes of this section, the agency's obligation to provide assistance, under 5

U.S.C. 4302(c)(5), may be discharged through measures, such as supervisory assistance, taken prior to the beginning of the opportunity period in addition to measures taken during the opportunity period. The agency must take some measures to provide assistance during the opportunity period in order to both comply with section 4302(c)(5) and provide an opportunity to demonstrate acceptable performance under 4302(c)(6).

(2) If an employee has performed acceptably for 1 year from the beginning of an opportunity to demonstrate acceptable performance (in the critical element(s) for which the employee was afforded an opportunity to demonstrate acceptable performance), and the employee's performance again becomes unacceptable, the agency shall afford the employee an additional opportunity to demonstrate acceptable performance before determining whether to propose a reduction in grade or removal under this part.

(3) A proposed action may be based on instances of unacceptable performance which occur within a 1 year period ending on the date of the notice of proposed action.

(4) An employee whose reduction in grade or removal is proposed under this part is entitled to:

    (i) *Advance notice.*

        (A) The agency shall afford the employee a 30 day advance notice of the proposed action that identifies both the specific instances of unacceptable performance by the employee on which the proposed action is based and the critical element(s) of the employee's position involved in each instance of unacceptable performance.

        (B) An agency may extend this advance notice period for a period not to exceed 30 days under regulations prescribed by the head of the agency. An agency may extend this notice period further without prior OPM approval for the following reasons:

            *(1)* To obtain and/or evaluate medical information when the employee has raised a medical issue in the answer to a proposed reduction in grade or removal;

            *(2)* To arrange for the employee's travel to make an oral reply to an appropriate agency official, or the travel of an agency official to hear the employee's oral reply;

46

*(3)* To consider the employee's answer if an extension to the period for an answer has been granted (e.g., because of the employee's illness or incapacitation);

*(4)* To consider reasonable accommodation of a disability;

*(5)* If agency procedures so require, to consider positions to which th employee might be reassigned or reduced in grade; or

*(6)* To comply with a stay ordered by a member of the Merit Systems Protection Board under 5 U.S.C. 1208(b).

**(C)** If an agency believes that an extension of the advance notice period is necessary for another reason, it may request prior approval for such extension from the Manager, Employee Accountability, Accountability and Workforce Relations, Employee Services, Office of Personnel Management, 1900 E Street NW, Washington, DC 20415.

**(ii)** *Opportunity to answer.* The agency shall afford the employee a reasonable time to answer the agency's notice of proposed action orally and in writing.

**(iii)** *Representation.* The agency shall allow the employee to be represented by an attorney or other representative. An agency may disallow as an employee's representative an individual whose activities as a representative would cause a conflict of interest or position or an employee whose release from his or her official position would give rise to unreasonable costs to the Government or whose priority work assignment precludes his or her release from official duties.

**(iv)** *Consideration of medical conditions.* The agency shall allow an employee who wishes to raise a medical condition which may have contributed to his or her unacceptable performance to furnish medical documentation (as defined in § 339.102 of this chapter of the condition for the agency's consideration. Whenever possible, the employee shall supply this documentation following the agency's notification of unacceptable performance under § 432.104. If the employee offers such documentation after the agency has proposed a reduction in grade or removal, he or she shall supply this information in accordance with § 432.105(a)(4)(ii). In considering documentation submitted in connection with the employee's claim of a medical condition, the agency may require or offer a medical examination in accordance with the criteria and procedures of part 339 of this chapter, and shall be aware of the affirmative obligations of 29 CFR 1613.704. If the employee who raises a medical condition has the requisite years of service under the Civil Service

47

Retirement System or the Federal Employees Retirement System, the agency shall provide information concerning application for disability retirement. As provided at § 831.501(d) of this chapter, an employee's application for disability retirement shall not preclude or delay any other appropriate agency decision or personnel action.

(b) *Final written decision.* The agency shall make its final decision within 30 days after expiration of the advance notice period. Unless proposed by the head of the agency, such written decision shall be concurred in by an employee who is in a higher position than the person who proposed the action. In arriving at its decision, the agency shall consider any answer of the employee and/or his or her representative furnished in response to the agency's proposal. A decision to reduce in grade or remove an employee for unacceptable performance may be based only on those instances of unacceptable performance that occurred during the 1 year period ending on the date of issuance of the advance notice of proposed action under § 432.105(a)(4)(i). The agency shall issue written notice of its decision to the employee at or before the time the action will be effective. Such notice shall specify the instances of unacceptable performance by the employee on which the action is based and shall inform the employee of any applicable appeal and/or grievance rights.

[54 FR 26179, June 21, 1989. Redesignated and amended at 54 FR 49076, Nov. 29, 1989. Redesignated and amended at 58 FR 65534, Dec. 15, 1993; 85 FR 65982, Oct. 16, 2020]



■ CFR Toolbox

Law about... Articles from Wex
Table of Popular Names
Parallel Table of Authorities

17

48

# ATTACHMENT #7

## Employee And Labor Relations Manual (ELM) Chapter 6, Section 651.53

G

# 650 Nonbargaining Disciplinary, Grievance, and Appeal Procedures

## 651 Disciplinary and Emergency Procedures

### 651.1 Scope

This part establishes procedures for (a) disciplinary action against nonprobationary employees who are not subject to the provisions of a collective-bargaining agreement, and (b) emergency action for conduct which also normally warrants disciplinary action.

### 651.2 Representation

Employees have free choice of representation. Representatives designated to assist employees, if postal employees and if otherwise in a duty status, are granted a reasonable amount of official time to respond to notices of proposed disciplinary action, prepare for and represent the employee at a hearing held in accordance with 652.23, and while representing an employee who has appealed a letter of warning or emergency placement in a nonduty status in accordance with 652.3.

### 651.3 Emergency Placement in Off-Duty Status

An employee may be placed in an off-duty status immediately (without pay), but remains on the rolls, when: (a) intoxicated, (b) failing to observe safety rules, (c) failing to obey a direct order, or (d) disrupting day-to-day postal operations in any other way. The employee is returned to duty status when the cause for nonpay status ceases. Placement in an off-duty status is confirmed in writing, stating the reasons, and advising the employee that the action is appealable. Use of these emergency procedures does not preclude disciplinary action based on the same conduct.

### 651.4 Letters of Warning

When warranted by the failure of nondisciplinary corrective measures such as discussions or counselings, or by the seriousness of the offense, a letter of warning may be issued, usually by the employee's immediate supervisor. The written warning should contain (a) specific reasons for the letter, and (b) a statement of appeal rights (see 652.311 and 652.312).

### 651.5 Reserved

For information replacing the former 651.5, Suspensions, Fourteen Days or Less, see Management Instruction EL-650-96-3, *Letters of Warning in Lieu of Time-Off Suspensions.*

## 651.6  Adverse Actions

### 651.61  Definition

Adverse actions are defined as discharges, suspensions of more than 14 days, furloughs without pay, and reductions in grade or pay.

### 651.62  Policy

Action may be taken against an employee (a) because lesser measures have not resulted in the correction of deficiencies in behavior or performance, (b) because of the gravity of the offense, or (c) for nondisciplinary reasons, such as the correction of a position misranking.

### 651.63  Notice

Unless the circumstances of a particular case make it impractical, the employee's immediate supervisor issues a written notice of proposed adverse action. This notice includes (a) the action proposed, with specific and detailed reasons, (b) the instructions for responding to the notice, (c) a statement of the right of the employee or representative to review all material relied upon in proposing the action, and when and where the material is available for review, and (d) the name of the official rendering the decision. The proposal also advises the employee that a reasonable amount of official time is allowed for the preparation and presentation of a reply if the employee is otherwise in a duty status, and that the proposed action will be effected no sooner than 30 calendar days after the employee receives the notice.

### 651.64  Response

The employee or representative may respond to the notice in writing, in person, or both, to the decision-making authority or designee. When the proposal notice is issued by an installation head or officer, response may be made to that official or representative. The employee or representative may respond and present evidence, including affidavits, within 10 calendar days from receipt of the notice. The time limits for responding may be extended for reasonable cause.

### 651.65  Decision

The decision-making official, who must be higher in authority than the proposing official, considers the employee's response and gives a written decision, including reasons, as soon as possible after the employee's time to respond has expired. In field installations, the installation head or designee usually makes the decision; in other offices, the decision is made by a branch manager or above. If the decision is to effect the adverse action or to modify it to a lesser penalty, the employee's appeal rights, including Merit Systems Protection Board appeal rights, if appropriate, are stated.

### 651.66  Duty Status

The employee, unless otherwise provided in 651.67, remains in a pay status either on the job or on administrative leave, at the option of the employer, during the notice period which must be at least 30 calendar days. Discharged or indefinitely suspended employees who appeal remain on the rolls in a


nonpay, nonduty status until the disposition of the case through the chosen appeal procedures.

## 651.67 Exceptions to Thirty-Day Notice

When there is reasonable cause to believe an employee is guilty of a crime for which a sentence of imprisonment may be imposed, the advance notice before effecting the adverse action may be reduced to no less than 7 calendar days. At the expiration of the reduced notice period, the decision is issued at once. If the decision is to suspend the employee indefinitely, the individual remains on the rolls in a nonpay, nonduty status pending a final decision or until the suspension is otherwise terminated. If the decision is to remove the employee, the individual remains on the rolls only if a timely appeal is filed.

# 652 Grievance and Appeal Procedures

## 652.1 Scope

This section establishes grievance and appeal procedures for employees not subject to the provisions of a collective-bargaining agreement. These procedures do not (a) deprive an employee of the right to remedy an allegation of discrimination through equal employment opportunity procedures; or (b) deprive a preference eligible or other entitled employee to appeal an adverse action to the Merit Systems Protection Board; however, if Merit Systems Protection Board rights are exercised, the employee waives access to the procedures in this section. This section does not apply to actions for which other appeal procedures are provided (except EEO).

## 652.2 Appeal of Adverse Actions and Suspensions of Fourteen Days or Less

### 652.21 Coverage

### 652.211 Category of Employee

Upon receipt of a letter of decision ordering an adverse action or a suspension of 14 days or less, the following employees may appeal:

a.    EAS and PCES Level I employees who have completed 6 months of continuous USPS service, and

b.    EAS and PCES Level I employees who have completed a minimum of 12 months of combined service, without a break of a workday, in positions in the same line of work in the Civil Service and USPS — unless any part of this service followed a temporary appointment in the competitive service with a definite time limitation.

### 652.212 Exclusion

Officers (PCES Level II) are not covered by these procedures.

Employee Relations
Nonbargaining Disciplinary, Grievance, and Appeal Procedures

| ELM 12.1 Contents | Summary of Updates |

52

652.22

## 652.22 Appeal to Step 1

### 652.221 Field Employees Administratively Responsible to the RPMG or a Regional Chief Inspector

These employees may submit a written request for a hearing, or waiver of a hearing, within 15 calendar days of receipt of a letter of decision on an adverse action or suspension of 14 days or less. This appeal is made to the Step I official (RPMG or Regional Chief Inspector or designee). A copy of the appeal is sent to the official taking the action, who forwards the case file to the Step I official.

Exception: The above procedures do not apply to Postal Inspectors.

### 652.222 Headquarters or Field Employees Not Administratively Responsible to the RPMG

These employees may submit a written request for a hearing, or waiver of a hearing, to the Step I official (APMG or department head) within 15 calendar days of receipt of a letter of decision on an adverse action or suspension of 14 days or less. Postal Inspectors who are under the administrative jurisdiction of Regional Chief Inspectors submit their appeals to the Chief Postal Inspector. A copy is sent to the official taking the action, who forwards the file to the Step I official.

### 652.223 Exceptions

In cases where an SAPMG or other officer reporting directly to the Postmaster General is the deciding official, the PMG or designee is the sole appellate official. These exceptions apply to both 652.231 and 652.232.

## 652.23 Hearings

### 652.231 Action If No Hearing Requested

If the appellant does not request a hearing, the Step I official determines whether the issues on appeal can be decided on the record and on written submissions by the appellant and management. If the appeal cannot be judged fairly without a hearing, the Step I official schedules a hearing.

### 652.232 Action When Hearing Requested

a. If the appellant requests a hearing, a hearing officer is assigned by the Step I official. The hearing is held as soon as possible, usually at the installation where the appellant is located. The employee receives at least 7 calendar days' notice of the hearing.

b. Conduct of the hearing is informal, but consistent with the orderly presentation of the case. Testimony is given under oath or affirmation. While legal rules of evidence do not apply, testimony and evidence is held within reasonable bounds of relevancy. The appellant and the employer have the right (1) to be present at the hearing, (2) to be represented, (3) to present evidence and witnesses, and (4) to cross-examine the other party's witnesses. The appellant and representative, if a postal employee in a duty status, are granted a reasonable amount of official time to prepare for the hearing. The appellant may choose self-representation.

c. Before the hearing, both management and the appellant will advise the Step I official or the hearing officer of their choice of representative witnesses and the nature of their testimony. This information will be exchanged between both parties.

## 652.233 Management Obligation for Witnesses

Management has an obligation to make available witnesses who are postal employees and approved by the hearing officer as having relevant testimony, unless it is administratively impractical to do so. In these cases, witnesses may be required by the hearing officer to answer written questions.

## 652.234 Workhours Compensation

The appellant, representative, and witnesses, if postal employees in a duty status at the time of the hearing, are compensated for straight time hours spent at the hearing that are part of their regularly scheduled workday. Witnesses are not present at the hearing except when testifying, unless they are also acting as representatives or technical advisors.

## 652.235 Noninterference Rule

The appellant, representative, and witnesses are not subject to restraint, interference, coercion, discrimination, or reprisal.

## 652.236 Transcript

A written transcript of the hearing taken by a court reporter or other qualified person is normally made of the hearing proceedings. The office or installation initiating the adverse action or suspension of 14 days or less will arrange for and pay all costs of the transcript. If, because of geographical remoteness or other unusual circumstances, a written transcript cannot be obtained, an exception to the procedures must be authorized in advance by the appropriate Regional Director, Human Resources.

## 652.24 Step I Decision

The hearing officer prepares the findings of fact for consideration by the Step I official as soon as possible after receipt of the written transcript of the hearing. The Step I official reviews the case and issues a prompt decision, usually within 15 calendar days. The letter to the appellant includes the reasons for the decision and further appeal rights. Enclosed with that letter will be a copy of the written transcript of the hearing and the hearing officer's findings.

## 652.25 Step II Appeal and Decision

An employee or representative may appeal in writing, within 15 calendar days after receiving the Step I decision, to the PMG or designee — with a copy to the Step I official. Appeals are addressed to the

POSTMASTER GENERAL
C/O APMG EMPLOYEE RELATIONS DEPT
US POSTAL SERVICE
475 L'ENFANT PLZ SW
WASHINGTON DC 20260-4200.



Employee Relations
Nonbargaining Disciplinary, Grievance, and Appeal Procedures

ELM 12.1 Contents    Summary of Updates

54

652.3

Upon receipt of a copy of the appeal, the Step I official forwards the file to the APMG, Employee Relations. The case is reviewed and a written decision is usually due within 15 days of the receipt of the appeal. This decision is final.

## 652.3  Other Grievances

### 652.31  Coverage

652.311  Employees in EAS-16 and below, regardless of length of service, may appeal letters of warning, emergency placement in a nonduty status, and other matters not covered by 652.2 by using the procedures in sections 652.32 through 652.34.

652.312  PCES Level I and EAS-17 and above employees have access to these procedures only to appeal discipline in the nature of a letter of warning and emergency placement in a nonduty status.

### 652.32  Step A

An employee or representative states the grievance in writing to the immediate supervisor within 10 calendar days of learning its cause. The employee or representative has the opportunity to discuss the grievance with the supervisor during this period. The supervisor gives a written decision within 5 calendar days **after receipt of grievance.** If this is impossible because of extenuating circumstances, the decision, when written, must explain the reason(s) for the delay.

### 652.33  Step B

A field employee or representative may appeal in writing within 7 calendar days after receipt of the Step A decision to the installation head. (If the installation head is the immediate supervisor, appeals are made to the next higher level of management.) A Headquarters, regional, or Inspection Service employee or representative may appeal within the same time limits to the next higher level of management (superior to the supervisor), at least a manager or above. The appeal must include the employee's name, title, grade, location, nature of grievance, and basis for appeal. Upon receipt of the appeal, the Step B official discusses the grievance with the employee or representative and renders a decision in writing within 10 calendar days after receipt of the appeal. Usually this decision is final.

### 652.34  Review

The employee or representative may request a review of the Step B decision. The request of an employee administratively responsible to the RPMG is directed to the Regional Director, Human Resources. The request of a Headquarters employee, or field employee not administratively responsible to the RPMG, is sent to the APMG, Employee Relations, with a copy to the Step B official, who forwards the file to the review official. The request is in writing and gives specific reasons why the employee believes the Step B decision should be reviewed. The request is made within 15 calendar days from receipt of the Step B decision. The review official replies in writing and states the disposition of the employee's request. This reply is final.

55

# ATTACHMENT #.8

# Respondent (USPS) Notice Of Termination,
## Dated May 16TH, 1996

H  H

56

CHICAGO BULK MAIL CENTER


UNITED STATES
POSTAL SERVICE

MAY 16, 1996

CBMC:IPS:WFZ:lb

CC
File
Kentee

LETTER OF DECISION

S. Durr
911 N. Homan Avenue
Chicago, IL. 60651-4157

VIA: Registered Mail #R 773 700 024
RETURN RECEIPT REQUESTED
CC: ORDINARY MAIL

By letter dated April 24, 1996 you were informed of a proposal to remove you
from the Postal Service.

The reason for your Proposed Notice of Removal is that you have been absent
from your scheduled tour of duty at the Chicago Bulk Mail Center without official
leave, (AWOL), since January 16, 1996 and have not returned to duty.

You did not submit an oral or written reply within the allowable time limit to
submit an answer.

I find that the reason stated in the Proposed Notice of Removal is fully supported
by the evidence and warrants your removal to promote the efficiency of the
Service.

Employees are required to be regular in attendance and report any reasons they
may have for being absent. Employees are also expected to be honest and
trustworthy at all times. Your failure to report for work for an extended period of
time is intolerable. Employees have a responsibility to maintain their work
schedules and provide acceptable evidence for absences when required, which
you have failed to do. It is my decision therefore that you be removed, effective
June 1, 1996.

As a preference eligible, you have the right to appeal this decision in writing to
the Merit Systems Protection Board, 230 South Dearborn Street, 31st Floor,
Chicago, Illinois 60604-1669, within 30 days from the effective date of this
decision. If you appeal to the MSPB, you should state whether you do or do not
wish a hearing and you should furnish me a copy of your appeal. For further
information on appeal procedures contact the Employee and labor Relations
Department of the Chicago Bulk Mail Center. Attached for your reference, is a
copy of the MSPB regulations and a copy of the appeal forms.

7500 W. ROOSEVELT
FOREST PARK, IL 60130-2288
THIS JOB TAKE                    000001

57

May 16, 1996

Letter of Decision - S. Durr
SSN: ████████

Page -2-

If you appeal this action, you will remain on the rolls, but in a nonpay, nonduty status after the effective date of this action, until disposition of your case has been reached either by settlement or through exhaustion of your administrative remedies.

You are entitled to a representative of your own choosing throughout your appeal. You and your representative, if a Postal Service employee, shall be afforded a reasonable amount of official time for preparation of your case if you and/or your representative are otherwise in a duty status.

If you appeal to the Merit Systems Protection Board, you thereby waive access to any procedures under the National Agreement beyond Step 3 of the Grievance-Arbitration procedures.

If this action is overturned on appeal, back pay will be allowed, unless otherwise specified in the appropriate award or decision. **ONLY IF YOU HAVE MADE REASONABLE EFFORTS TO OBTAIN OTHER EMPLOYMENT DURING THE RELEVANT NON-WORK PERIOD.** The extent of documentation necessary to support your back pay claim is explained in the ELM, Section 436, (copy attached).

*Walter F. Zobel*

Walter F. Zobel
Manager, In-Plant Support

Attachment: Federal Register Merit Systems
Protection Board Procedure
Part 436.425, E&LR Manual